# EXHIBIT 1

CENTRAL MUTUAL MSJ 001



*Fulfilling the Promise Since 1876*

June 02, 2020

8  BXS          8667927      10    TX
BXS INSURANCE INC
PO BOX 27469
HOUSTON, TX 77227-7469

AV WAREHOUSING & CRATING LLC
AV METALS LLC
1535 MOONEY RD
HOUSTON, TX 77093-1822

Thank you for your business!  Enclosed you will find information regarding your policy. If you have questions regarding the information provided, please contact your agent at (713)622-2330 .

We encourage you to sign up for our *myCentral* policyholder website and take advantage of convenient, easy-to-use account management options for your Central Insurance policy. Make payments, access policy information, check account balances, view auto ID cards, report a claim, and much more! Click on the "Create Account" link in the *myCentral* log in box on central-insurance.com and provide the following information to establish online access:

| | |
|---|---|
| Policy Number | 8667927 |
| Policy Effective Date | 05/29/2020 |
| City | HOUSTON |
| State | TX |
| Zip Code | 77093 |



If you have **Billing and Payment** questions, call 800-786-9052 or e-mail us at billing@central-insurance.com.

To **Report a Claim**, call 888-263-2924.

Central Insurance Companies embraces a culture based on our core values of Integrity, Relationships and Excellence.  These values define who we are and what we do, as individuals and as a company.  We take pride in partnering with agents who support these same values.

We appreciate the opportunity to provide your insurance needs.



CENTRAL MUTUAL MSJ 003

20-2143 06/14



# AVAILABLE PAY PLANS

The company offers.

1.   **EFT Plans (Electronic Funds Transfer): ** No service fees apply to any of the EFT plans. **

   a.   Annual EFT − the premium is paid in one installment withdrawn on the effective date of the policy.

   b.   Semi-Annual EFT − the premium is paid in two installments, withdrawn six months apart.

   c.   Quarterly EFT − the premium is paid in four installments, withdrawn three months apart.

   d.   Monthly EFT − the premium is paid in twelve monthly withdrawals.

2.   **NON-EFT Plans:**

   a.   Annual − the premium is paid in one installment due on the effective date of the policy. No service fees apply.

   b.   Semi-Annual − the premium is paid in two installments due six months apart. Service fees apply.

   c.   Quarterly − the premium is paid in four installments due three months apart. Service fees apply.

   d.   Monthly − the premium is paid in twelve monthly installments. Service fees apply.

We offer account billing on each of the above plans which allows for multiple policies to be billed together on a single account.  We require separate billing accounts for personal and commercial lines policies.

Please note, the above plans may not apply to all types of policies.

**CENTRAL MUTUAL MSJ 004**

20-2504 01 20

## TEXAS IMPORTANT NOTICE

Figure: 28 TAC §1.602(b)(1)(C)

### Where you can get information or make a complaint

If you have a question or a problem with a claim or your premium, contact your insurance company first. You can also get information or file a complaint with the Texas Department of Insurance.

To get information or file a complaint with your insurance company:

**Call: Customer Services toll-free at 1-800-733-2233**

Online: www.central-insurance.com

Email: billing@central-insurance.com

Mail: 7301 North State Highway 161, Suite 320, Irving, TX 75309

### The Texas Department of Insurance

To get help with an insurance question, learn about your rights, or file a complaint with the state:

Call: 1-800-252-3439

Online: www.tdi.texas.gov

Email: ConsumerProtection@tdi.texas.gov

Mail: MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091

### To compare policies and prices

Visit **HelpInsure.com** to compare prices and coverages on home and auto insurance policies. The website is a service of the Texas Department of Insurance and the Office of Public Insurance Counsel.

### Donde puede obtener información o presentar una queja

Si tiene una pregunta o un problema con una reclamación o con su prima de seguro, comuníquese primero con su compañía de seguros. Usted también puede obtener información o presentar una queja ante el Departamento de Seguros de Texas (Texas Department of Insurance, por su nombre en inglés).

Para obtener información o para presentar una queja ante su compañía de seguros:

**Llame a: Customer Services al 800-733-2233**

**Teléfono gratuito: 1-800-733-2233**

En línea: www.central-insurance.com

Correo electrónico: billing@central-insurance.com

Dirección postal:  7301 North State Highway 161, Suite 320, Irving, TX 75309

**El Departamento de Seguros de Texas**

Para obtener ayuda con una pregunta relacionada con los seguros, para conocer sus derechos o para presentar una queja ante el estado:

Llame: 1-800-252-3439

En línea: www.tdi.texas.gov

Correo electrónico: ConsumerProtection@tdi.texas.gov

Dirección postal: MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091

**Para comparar pólizas y precios**

Visite **HelpInsure.com** para comparar precios y coberturas en pólizas de seguro para el hogar y automóvil. El sitio web es un servicio del Departamento de Seguros de Texas y de la Oficina del Asesor Público de Seguros (Office of Public Insurance Counsel, por su nombre en inglés).

22-1260 11 19



CENTRAL
INSURANCE
COMPANIES®

*Fulfilling the Promise Since 1876*

# AN IMPORTANT LOSS CONTROL MESSAGE
# FOR OUR LIABILITY POLICYHOLDERS

The Central Insurance Companies have a broad range of Loss Control consulting services available to assist you with your safety program and activities. These services, commensurate with the hazards, exposures, experience, and size of your business, require your cooperation and participation to make them most effective. Loss prevention preserves your most valuable assets . . . your customers, your employees and your property.

Central's Loss Control Department provides these consulting services based on your needs and requirements. The services available to you upon request at no charge are:

1. Loss Control surveys of your premises and operations.

2. Recommendations and suggestions based on the survey.

3. Assistance with your safety training programs.

4. Audio-visual training aids including videos, DVD, presentations, and webinars.

5. Informational resoures including bulletins, risk management tools, posters and articles.

6. Consultation on technical safety problems you may have.

7. Analysis of accident causes and suggested corrective measures you can implement.

8. Consultation on your implementation of a Loss Control program designed for your needs.

Central's staff of Loss Control Consultants is prepared to consult with you on the effectiveness of your safety program and to assist you in implementing such a program. Simply contact your Central agent or call one of our regional offices and ask for the Loss Control department.

**Regional Offices**

| | |
|---|---|
| Van Wert, OH (IL, IN, KY, MI, OH, WI) | 1-800-736-7000 |
| Waltham, MA (CT, MA, NH, NY, PA) | 1-800-359-2233 |
| Alpharetta, GA (GA, MD, NC, SC, TN, VA) | 1-800-877-2233 |
| Irving, TX  (AZ, CO, ID,  NM, NV, OK, TX, UT) | 1-800-733-2233 |

3-2448 09/19

 CENTRAL INSURANCE COMPANIES

*Fulfilling the Promise Since 1876*

# TEXAS MOTOR VEHICLE CRIME PREVENTION
# AUTHORITY SURCHARGE NOTICE

Your payment includes a $4.00 fee per vehicle each year.

This fee helps fund:

    1. Auto burglary, theft, and fraud prevention,
    2. Criminal justice efforts, and
    3. Trauma care and emergency medical services for victims of accidents due to traffic offenses.

By law, this fee funds the Motor Vehicle Crime Prevention Authority (MVCPA).

3-2448 09/19

**CENTRAL MUTUAL MSJ 008**

**CENTRAL MUTUAL MSJ 009**

3-3087 10 16



**CENTRAL INSURANCE COMPANIES**
*Fulfilling the Promise Since 1876*

# NOTICE TO POLICYHOLDERS REGARDING
# NUCLEAR, BIOLOGICAL, CHEMICAL, OR RADIOLOGICAL EXCLUSION

Coverage for some acts of terrorism is included in your policy. An act of terrorism could involve Nuclear (including radiation or radioactive contamination) or pathogenic or poisonous Biological or Chemical materials.  An example of this would be the release of anthrax spores.

Your previous policy included a Nuclear exclusion (a mandatory form attached to all policies) and Pollution exclusions (mandatory coverage language) to exclude terrorism loss that was caused by nuclear, chemical or radiological means.  There may have been a question of whether a biological event would be considered a pollutant and therefore excluded by the pollution exclusion.

Due to our reinsurance contracts containing an NBCR (Nuclear, Biological, Chemical, or Radiological) exclusion, your renewal policy now contains an NBCR exclusion, which makes it clear we will not cover any acts involving nuclear, biological, chemical or radiological terrorism.

Although we have chosen to exclude NBCR, we are still providing you with terrorism coverage for other acts.

**CENTRAL MUTUAL MSJ 010**

3-2528 01 17



CENTRAL
INSURANCE
COMPANIES ®

*Fulfilling the Promise Since 1876*

## A SAFETY MESSAGE TO OUR COMMERCIAL AUTOMOBILE POLICYHOLDERS

The safe operation of your company owned vehicles should be an important consideration in your overall business plans and objectives. Safe, courteous drivers along with good driver selection and vehicle maintenance programs will have a positive effect on your insurance rates.

To assist you in these activities we would like to offer some safety suggestions in the following areas.

### Driver Selection

When hiring a new employee who will drive one of your vehicles the following steps should be taken in the screening process.

1. Use an employment application and check previous employers - if possible.
2. A copy of the applicants M.V.R. (Motor Vehicle Record) should be obtained, reviewed and discussed.
3. Check the drivers license to make sure that it is current and that any restrictions will not adversely affect the operation of your vehicles.
4. Complete a road test to make certain that he/she can safely handle your vehicle and there are no bad driving habits that could cause accidents.

As part of our effort to help you control losses, we require you to advise your insurance agent of all drivers whom you know will be driving insured vehicles.  We also expect you to advise your agent of any driver changes that occur during the policy term.

### Driver Training

The establishment of some basic safe operating rules for all drivers will help to reduce accidents and cost:

1. Comprehensive understanding of the elements of the company's fleet safety program.
2. All occupants must wear their seat belts at all times.
3. No riders except company employees permitted.
4. Violations or accidents will not be tolerated.  Should one occur, immediate reporting is expected.
5. No vehicle abuse such as fast cornering, stops and starts or poor vehicle maintenance.
6. The use of alcohol or drugs is not permitted
7. Always lock the vehicle when unattended.
8. Pull over and stop the vehicle to use your cellular phone.
9. Secure all loads.

Establishing guidelines as to who is permitted to drive company vehicles as well as when and where they can be driven will help to reduce exposure to accidents and misuse.

### Vehicle Maintenance

Proper vehicle maintenance means safer vehicles and lower operating costs because of fewer breakdowns and unscheduled visits to the repair shop. Here are a couple of suggestions:

1. Follow the manufacturer's recommended preventive maintenance schedule.
2. Involve your drivers by having them report vehicle problems or unsafe conditions so they can be taken care of before they become major problems and potential accidents.

Let's work together to reduce accidents and to control your insurance costs.  If you would like assistance with your safety and loss control activities contact your insurance agent or the Central Insurance Companies Loss Control department.



**CENTRAL INSURANCE COMPANIES**
*Fulfilling the Promise Since 1876*

CENTRAL MUTUAL INSURANCE COMPANY
800 S. WASHINGTON ST
VAN WERT, OHIO 45891-2357
www.central-insurance.com

# DECLARATIONS - BUSINESS AUTO POLICY
## THIS POLICY MEETS THE MINIMUM LIABILITY COVERAGE REQUIRED BY LAW

### ITEM ONE

**NAMED INSURED AND MAILING ADDRESS**
AV WAREHOUSING & CRATING LLC
AV METALS LLC
1535 MOONEY RD
HOUSTON, TX 77093-1822

**AGENT** EB04                    NEW
BXS INSURANCE INC
PO BOX 27469
HOUSTON, TX 77227-7469
(713)622-2330
www.bxsi.com

**POLICY NUMBER:** BAP  8667927  10

**POLICY PERIOD:**  FROM 05/29/2020 TO 05/29/2021
                    AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**BUSINESS DESCRIPTION:** WAREHOUSE
**FORM OF BUSINESS:**     LIMITED LIABILITY COMPANY

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL OF THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

### ITEM TWO - SCHEDULE OF COVERAGES AND COVERED AUTOS

THIS POLICY PROVIDES ONLY THOSE COVERAGES WHERE A CHARGE IS SHOWN IN THE PREMIUM COLUMN ON ITEM TWO.  EACH OF THESE COVERAGES WILL APPLY ONLY TO THOSE "AUTOS" SHOWN AS COVERED "AUTOS".  "AUTOS" ARE SHOWN AS COVERED "AUTOS" FOR A PARTICULAR COVERAGE BY THE ENTRY OF ONE OR MORE SYMBOLS FROM THE COVERED AUTO SECTION OF THE BUSINESS AUTO COVERAGE FORM NEXT TO THE NAME OF THE COVERAGE.

# DECLARATIONS - BUSINESS AUTO POLICY (continued)

**NAMED INSURED**
AV WAREHOUSING & CRATING LLC

**POLICY NUMBER**
BAP 8667927  10

## ITEM TWO - SCHEDULE OF COVERAGES AND COVERED AUTOS (continued)

| COVERED AUTOS* | COVERAGES | LIMIT - THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| 1 | LIABILITY | $1,000,000 | $10,880.00 |
| 5 | PERSONAL INJURY PROTECTION | $5,000 | $56.00 |
| 7 | UNINSURED / UNDERINSURED MOTORISTS | $1,000,000 | $635.00 |
| 7 | COMPREHENSIVE | ** | $557.00 |
| 7 | COLLISION | ** | $1,315.00 |
| | | **TOTAL** | $13,443.00 |
| | **MISCELLANEOUS COVERAGES** | | |
| | BAP PLUS COVERAGE ENDORSEMENT | | $104.00 |
| | TERRORISM | | $34.00 |
| | **MISCELLANEOUS COVERAGES TOTAL PREMIUM** | | $138.00 |
| | MOTOR VEHICLE CRIME PREVENTION AUTHORITY SEE EXPLANATION ON FORM 3-2448 | | $28.00 |
| | **ESTIMATED TOTAL POLICY PREMIUM** | | $13,609.00 |

THIS POLICY MAY BE SUBJECT TO FINAL AUDIT

*  COVERED AUTOS - ENTRY OF ONE OR MORE OF THE SYMBOLS FROM SECTION I - COVERED AUTOS OF THE BUSINESS AUTO COVERAGE FORM SHOWS WHICH AUTOS ARE COVERED AUTOS

**  REFER TO FORM 3-2176 ITEM THREE

## DECLARATIONS - BUSINESS AUTO POLICY (continued)

**NAMED INSURED**
AV WAREHOUSING & CRATING LLC

**POLICY NUMBER**
BAP  8667927   10

### FORMS AND ENDORSEMENTS APPLICABLE TO POLICY  BAP 8667927 10  ON 05/29/2020

| FORM NBR | EDITION | FORM TITLE |
|----------|---------|------------|
| * CA0001 | 1013 | BUSINESS AUTO COVERAGE FORM |
| * CA0196 | 1013 | TX-CHANGES |
| * CA0243 | 1113 | TX-CHANGES - CANCELLATION AND NONRENEWAL |
| * CA0449 | 1116 | PRIMARY AND NONCONTRIBUTORY - OTHER INSURANCE CONDITION |
| * CA0505 | 1218 | TX-PUBLIC OR LIVERY PASSENGER CONVEYANCE EXCLUSION |
| * CA2109 | 1013 | TX-UNINSURED/UNDERINSURED MOTORISTS COVERAGE |
| * CA2264 | 1013 | TX-PERSONAL INJURY PROTECTION ENDORSEMENT |
| * CA2385 | 1013 | EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR CHEM TERR |
| * CA2394 | 1013 | SILICA OR SILICA-RELATED DUST EXCLUSION FOR COVERED AUTOS EXPOSUR |
| * CA9995 | 1013 | TX-SUPPLEMENTARY DEATH BENEFIT |
| * IL0017 | 1198 | COMMON POLICY CONDITIONS |
| * IL0021 | 0908 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| * 3-2395 | 0715 | TX-LIABILITY INSURANCE CARD |
| * 3-2448 | 0919 | TX-AUTO THEFT SURCHARGE NOTICE |
| * 3-2528 | 0117 | A SAFETY MESSAGE TO OUR COMMERCIAL AUTOMOBILE POLICYHOLDERS |
| * 3-2546 | 0315 | BAP PLUS COVERAGE ENDORSEMENT |
| * 3-2637 | 0517 | PREMIUM AUDIT ENDORSEMENT |
| * 3-3087 | 1016 | NOTICE TO POLICYHOLDERS - NBCR EXCLUSION |
| * 3-3103 | 0517 | PUNITIVE DAMAGES EXCLUSION |
| * 20-1770 | 0891 | TX-MUTUAL POL CONDITIONS APPLICABLE TO CENTRAL MUTUAL |
| * 20-1772 | 0900 | TX-IN WITNESS CLAUSE APPLICABLE TO CENTRAL MUTUAL & ALL AMERICA |
| * 20-2143 | 0614 | AVAILABLE PAY PLANS |
| * 20-2504 | 0120 | TX-IMPORTANT NOTICE |
| * 22-1260 | 1119 | LOSS CONTROL NOTICE FOR OUR LIABILITY POLICYHOLDERS |

 * DENOTES FORMS ATTACHED WITH THIS TRANSACTION

# DECLARATIONS - BUSINESS AUTO POLICY (continued)

**NAMED INSURED**
AV WAREHOUSING & CRATING LLC

**POLICY NUMBER**
BAP  8667927  10

**ITEM TWO - SCHEDULE OF COVERAGES AND COVERED AUTOS (continued)**

THE FOLLOWING LIMIT CONDITIONS APPLY ONLY IF THE COVERAGES SHOWN BELOW APPEAR ON FORM 3-2176 ITEM TWO.

**COMPREHENSIVE COVERAGE**

COMPREHENSIVE LIMIT - ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS THE DEDUCTIBLE SHOWN IN ITEM THREE FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING.  SEE ITEM FOUR FOR HIRED OR BORROWED AUTOS.

**SPECIFIED CAUSES OF LOSS**

SPECIFIED CAUSES OF LOSS LIMIT - ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $0 DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. SEE ITEM FOUR FOR HIRED OR BORROWED AUTOS.

**COLLISION COVERAGE**

COLLISION LIMIT - ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS MINUS THE DEDUCTIBLE SHOWN IN ITEM THREE FOR EACH COVERED AUTO.  SEE ITEM FOUR FOR HIRED OR BORROWED AUTOS.

## DECLARATIONS - BUSINESS AUTO POLICY (continued)

**NAMED INSURED**
AV WAREHOUSING & CRATING LLC

**POLICY NUMBER**
BAP  8667927  10

### ITEM THREE - SCHEDULE OF COVERED AUTOS YOU OWN

| VEH | YR | MAKE | DESCRIPTION | IDENTIFICATION NO | AGE | SYMBOL/ COST NEW | TERR | CLASS | ST |
|-----|------|--------|---------------|-------------------|-----|-----------|------|-------|-----|
| 001 | 2007 | CHEVY | SILVERADO | 1GBJC34K27E563299 | 14 | $46,000 | 001 | 21499 | TX |

GARAGE LOCATION:  HOUSTON

| COVERAGES | LIMIT | PREMIUM |
|-----------|-------|---------|
| LIABILITY | $1,000,000 | $1,980.00 |
| PERSONAL INJURY PROTECTION | $5,000 | $11.00 |
| UNINSURED / UNDERINSURED MOTORISTS | $1,000,000 | $127.00 |
| ATPA FEE | | $4.00 |
| COMPREHENSIVE | $1,000 DEDUCTIBLE | $67.00 |
| COLLISION | $1,000 DEDUCTIBLE | $149.00 |
| | TOTAL TERM PREMIUM | $2,338.00 |

| VEH | YR | MAKE | DESCRIPTION | IDENTIFICATION NO | AGE | SYMBOL/ COST NEW | TERR | CLASS | ST |
|-----|------|--------|---------------|-------------------|-----|-----------|------|-------|-----|
| 002 | 2012 | TX B | TRLR | 17XFG2526C1026062 | 9 | $5,000 | 001 | 68499 | TX |

GARAGE LOCATION:  HOUSTON

| COVERAGES | LIMIT | PREMIUM |
|-----------|-------|---------|
| LIABILITY | $1,000,000 | $193.00 |
| UNINSURED / UNDERINSURED MOTORISTS | $1,000,000 | INCL |
| ATPA FEE | | $4.00 |
| COMPREHENSIVE | $1,000 DEDUCTIBLE | $22.00 |
| COLLISION | $1,000 DEDUCTIBLE | $21.00 |
| | TOTAL TERM PREMIUM | $240.00 |

| VEH | YR | MAKE | DESCRIPTION | IDENTIFICATION NO | AGE | SYMBOL/ COST NEW | TERR | CLASS | ST |
|-----|------|--------|---------------|-------------------|-----|-----------|------|-------|-----|
| 003 | 2008 | FORD | F350 | 1FDWW37R08EB60145 | 13 | $35,000 | 001 | 21499 | TX |

GARAGE LOCATION:  HOUSTON

| COVERAGES | LIMIT | PREMIUM |
|-----------|-------|---------|
| LIABILITY | $1,000,000 | $1,980.00 |
| PERSONAL INJURY PROTECTION | $5,000 | $11.00 |
| UNINSURED / UNDERINSURED MOTORISTS | $1,000,000 | $127.00 |
| ATPA FEE | | $4.00 |
| COMPREHENSIVE | $1,000 DEDUCTIBLE | $55.00 |
| COLLISION | $1,000 DEDUCTIBLE | $102.00 |
| | TOTAL TERM PREMIUM | $2,279.00 |

## DECLARATIONS - BUSINESS AUTO POLICY (continued)

**NAMED INSURED**
AV WAREHOUSING & CRATING LLC

**POLICY NUMBER**
BAP  8667927  10

### ITEM THREE - SCHEDULE OF COVERED AUTOS YOU OWN

| VEH | YR | MAKE | DESCRIPTION | IDENTIFICATION NO | AGE | SYMBOL/ COST NEW | TERR | CLASS | ST |
|-----|-----|------|-------------|-------------------|-----|------------------|------|-------|-----|
| 004 | 2012 | CHEVY | SILVERADO | 3GCPCPEA3CG123680 | 9 | $35,000 | 001 | 21499 | TX |

GARAGE LOCATION:  HOUSTON

| COVERAGES | LIMIT | PREMIUM |
|-----------|-------|---------|
| LIABILITY | $1,000,000 | $1,980.00 |
| PERSONAL INJURY PROTECTION | $5,000 | $11.00 |
| UNINSURED / | $1,000,000 | $127.00 |
| UNDERINSURED MOTORISTS | | |
| ATPA FEE | | $4.00 |
| COMPREHENSIVE | $1,000 DEDUCTIBLE | $82.00 |
| COLLISION | $1,000 DEDUCTIBLE | $154.00 |
| | TOTAL TERM PREMIUM | $2,358.00 |

| VEH | YR | MAKE | DESCRIPTION | IDENTIFICATION NO | AGE | SYMBOL/ COST NEW | TERR | CLASS | ST |
|-----|-----|------|-------------|-------------------|-----|------------------|------|-------|-----|
| 005 | 2013 | TXB | TRLR | 16VGX2021D2377927 | 8 | $9,000 | 001 | 68499 | TX |

GARAGE LOCATION:  HOUSTON

| COVERAGES | LIMIT | PREMIUM |
|-----------|-------|---------|
| LIABILITY | $1,000,000 | $193.00 |
| PERSONAL INJURY PROTECTION | $5,000 | $1.00 |
| UNINSURED / | $1,000,000 | INCL |
| UNDERINSURED MOTORISTS | | |
| ATPA FEE | | $4.00 |
| COMPREHENSIVE | $1,000 DEDUCTIBLE | $31.00 |
| COLLISION | $1,000 DEDUCTIBLE | $47.00 |
| | TOTAL TERM PREMIUM | $276.00 |

| VEH | YR | MAKE | DESCRIPTION | IDENTIFICATION NO | AGE | SYMBOL/ COST NEW | TERR | CLASS | ST |
|-----|-----|------|-------------|-------------------|-----|------------------|------|-------|-----|
| 006 | 2015 | FORD | F150 | 1FTEW1EF4FFB33051 | 6 | $54,286 | 001 | 01499 | TX |

GARAGE LOCATION:  HOUSTON

| COVERAGES | LIMIT | PREMIUM |
|-----------|-------|---------|
| LIABILITY | $1,000,000 | $1,885.00 |
| PERSONAL INJURY PROTECTION | $5,000 | $11.00 |
| UNINSURED / | $1,000,000 | $127.00 |
| UNDERINSURED MOTORISTS | | |
| ATPA FEE | | $4.00 |
| COMPREHENSIVE | $1,000 DEDUCTIBLE | $141.00 |
| COLLISION | $1,000 DEDUCTIBLE | $397.00 |
| | TOTAL TERM PREMIUM | $2,565.00 |

**CENTRAL MUTUAL MSJ 017**

## DECLARATIONS - BUSINESS AUTO POLICY (continued)

**NAMED INSURED**
AV WAREHOUSING & CRATING LLC

**POLICY NUMBER**
BAP  8667927   10

### ITEM THREE - SCHEDULE OF COVERED AUTOS YOU OWN

| VEH | YR | MAKE | DESCRIPTION | IDENTIFICATION NO | AGE | SYMBOL/ COST NEW | TERR | CLASS | ST |
|-----|----|------|-------------|-------------------|-----|------------------|------|-------|----|
| 007 | 2016 | LEXUS GX 460 | | JTJJM7FX0G5147242 | 5 | $65,000 | 001 | 01499 | TX |
| | | | | GARAGE LOCATION:  HOUSTON | | | | | |

| COVERAGES | LIMIT | PREMIUM |
|-----------|-------|---------|
| LIABILITY | $1,000,000 | $1,885.00 |
| PERSONAL INJURY PROTECTION | $5,000 | $11.00 |
| UNINSURED / | $1,000,000 | $127.00 |
| UNDERINSURED MOTORISTS | | |
| ATPA FEE | | $4.00 |
| COMPREHENSIVE | $1,000 DEDUCTIBLE | $159.00 |
| COLLISION | $1,000 DEDUCTIBLE | $445.00 |
| | TOTAL TERM PREMIUM | $2,631.00 |

### ITEM FOUR - HIRED OR BORROWED COVERED AUTO COVERAGE

| STATE | COVERAGE | COST OF HIRE *IF ANY |
|-------|----------|----------------------|
| TX | LIABILITY | $128.00 |
| | TOTAL TERM PREMIUM | $128.00 |

* Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or employees or their family members).  Cost of hire does not include charges for services performed by motor carriers of property or passengers.

### ITEM FIVE - NON-OWNERSHIP LIABILITY

| | NO EMP/PTNRS | |
|---|---|---|
| LIABILITY | 100 | $656.00 |
| | TOTAL TERM PREMIUM | $656.00 |

### SCHEDULE OF MISCELLANEOUS COVERAGES

| BAP PLUS COVERAGE ENDORSEMENT | | $104.00 |
|-------------------------------|-------|---------|
| MISCELLANEOUS COVERAGES | STATE | PREMIUM |
| TERRORISM | TX | $34.00 |

| | | |
|---|---|---|
| _____ | _____ | **June 02, 2020** |
| **PRESIDENT** | **SECRETARY** | **DATE** |

CA0001 10 13

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

## A. Description Of Covered Auto Designation Symbols

| Symbol | Description Of Covered Auto Designation Symbols | |
|--------|--------|--------|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5** | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

Copyright, Insurance Services Office, Inc., 2011

**CENTRAL MUTUAL MSJ 019**

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|---|---|---|

**B. Owned Autos You Acquire After The Policy Begins**

   **1.** If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

   **2.** But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

     **a.** We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

     **b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

   **1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

   **2.** "Mobile equipment" while being carried or towed by a covered "auto".

   **3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

     **a.** Breakdown;

     **b.** Repair;

     **c.** Servicing;

     **d.** "Loss"; or

     **e.** Destruction.

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

   **1. Who Is An Insured**

The following are "insureds":

     **a.** You for any covered "auto".

     **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

       **(1)** The owner or anyone else from whom you hire or borrow a covered "auto".

**CENTRAL MUTUAL MSJ 020**

This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

**(1)** Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed;

Copyright, Insurance Services Office, Inc., 2011

    **(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

    **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

    **(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

    **(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

    **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts if:

    **(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

**1.** We will pay for "loss" to a covered "auto" or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism; or

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c. Collision Coverage**

Caused by:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**2. Towing**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

**a.** Glass breakage;

**b.** "Loss" caused by hitting a bird or animal; and

**c.** "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

**4. Coverage Extensions**

**a. Transportation Expenses**

We will pay up to $20 per day, to a maximum of $600, for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

**b. Loss Of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

## B. Exclusions

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War Or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" due and confined to:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

**5.** Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

**a.** Permanently installed in or upon the covered "auto";

**b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

**c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

**d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

**6.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limits Of Insurance

**1.** The most we will pay for:

**a.** "Loss" to any one covered "auto" is the lesser of:

**(1)** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**(2)** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

    **b.** All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

        **(1)** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

        **(2)** Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

        **(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

  **2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

  **3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

  **1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    **a.** Pay its chosen appraiser; and

    **b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

  **2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

    **a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

        **(1)** How, when and where the "accident" or "loss" occurred;

        **(2)** The "insured's" name and address; and

        **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

    **b.** Additionally, you and any other involved "insured" must:

        **(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

        **(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

        **(4)** Authorize us to obtain medical records or other pertinent information.

        **(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

    **c.** If there is "loss" to a covered "auto" or its equipment, you must also do the following:

        **(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

        **(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

        **(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option, we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own; or

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico;

**(4)** Canada; and

**(5)** Anywhere in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to**.**

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way

**CENTRAL MUTUAL MSJ 028**

responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   **a.** That are, or that are contained in any property that is:

      **(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

      **(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

      **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

   **b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

   **c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

      **(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

      **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

      **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

      **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

   **1.** A lease of premises;

   **2.** A sidetrack agreement;

   **3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

   **6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

   **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

     **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

     **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

     **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

     **2.** Vehicles maintained for use solely on or next to premises you own or rent;

     **3.** Vehicles that travel on crawler treads;

     **4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

          **a.** Power cranes, shovels, loaders, diggers or drills; or

          **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

     **5.** Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

          **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

          **b.** Cherry pickers and similar devices used to raise or lower workers; or

     **6.** Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

          **a.** Equipment designed primarily for:

               **(1)** Snow removal;

               **(2)** Road maintenance, but not construction or resurfacing; or

               **(3)** Street cleaning;

          **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

          **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

     **1.** Damages because of "bodily injury" or "property damage"; or

     **2.** A "covered pollution cost or expense";

to which this insurance applies, are alleged.

"Suit" includes:

     **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

     **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

IL0017 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A.   CANCELLATION**

1.   The first Named Insured shown in the Declarations or Change Endorsement may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

a.   10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

b.   30 days before the effective date of cancellation if we cancel for any other reason.

3.   We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.   Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

5.   If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6.   If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.   CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations or Change Endorsement is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C.   EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D.   INSPECTIONS AND SURVEYS**

1.   We have the right to:

a.   Make inspections and surveys at any time;

b.   Give you reports on the conditions we find; and

c.   Recommend changes.

2.   We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only insurability and the premiums to be charged. We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

a.   Are safe or healthful; or

b.   Comply with laws, regulations, codes or standards.

3.   Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4.   Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E.   PREMIUMS**

The first Named Insured shown in the Declarations or Change Endorsement:

1.   Is responsible for the payment of all premiums; and

2.   Will be the payee for any return premiums we pay.

**F.   TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

          Copyright, Insurance Services Office, Inc., 1998   **CENTRAL MUTUAL MSJ 032**

20-1770 08/91

## PROVISIONS APPLICABLE TO CENTRAL MUTUAL INSURANCE COMPANY

MUTUALS — MEMBERSHIP AND VOTING NOTICE: The named insured is notified that by virtue of this policy the named insured is a member of the Central Mutual Insurance Company of Van Wert, Ohio and is entitled, as is lawfully provided in the charter, constitution, and by-laws, to one vote either in person or by proxy in any or all meetings of said Company.  The Annual Meetings are held in its Home Office, Van Wert, Ohio, on the second Wednesday of May, in each year, at two o'clock P.M.

MUTUALS — PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY: No Contingent Liability: This policy is nonassessable. The policyholder is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

20-1772 09/00

## PROVISIONS APPLICABLE TO CENTRAL MUTUAL AND
## ALL AMERICA INSURANCE COMPANIES

**In Witness Whereof,** the company has caused this policy to be executed and attested.

President                    Secretary

CENTRAL MUTUAL MSJ 034

IL0021 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (BROAD FORM)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

    **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

        **1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        **2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

        **1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

        **2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

        **3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material," "special nuclear material" or "by-product material."

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

**a)**    Any "nuclear reactor";

**b)**    Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel," or **(3)** handling, processing or packaging "waste";

**c)**    Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**d)**    Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

CA0196 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

For a covered "auto" licensed or principally garaged in Texas, this endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Physical Damage Coverage**

**1.** The following exclusion is added to Paragraph **B. Exclusions** in the **Physical Damage Coverage** section:

We will not pay for "loss" due to or as a consequence of a seizure of a covered "auto" by federal or state law enforcement officers as evidence in a case against you under the Texas Controlled Substances Act or the federal Controlled Substances Act if you are convicted in such case.

**2.** Paragraphs **C.2.** and **C.3.** of the **Limit Of Insurance** provision under **Physical Damage Coverage** do not apply.

**3.** Paragraph **D. Deductible** in the **Physical Damage Coverage** section is amended by the addition of the following:

At the mutual agreement of you and us, we will not apply the deductible to "loss" to glass, if the glass is repaired rather than replaced.

**B. Changes In Conditions**

The following condition is added:

**Claim-handling Procedures**

**1.** Within 15 days after we receive written notice of a claim, we will:

**a.** Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

**b.** Begin any investigation of the claim; and

**c.** Specify the information you must provide in accordance with Paragraph **b.** of the Duties Condition.

We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

**2.** After we receive the information we request, we will notify you in writing as to whether:

**a.** The claim will be paid;

**b.** The claim has been denied, and inform you of the reasons for denial;

**c.** More information is necessary; or

**d.** We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

We will provide notification, as described in **2.a.** through **2.d.** above, within:

**a.** 15 "business days"; or

**b.** 30 days if we have reason to believe the "loss" resulted from arson.

If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

**3.** If a claim results from a weather-related catastrophe or a major natural disaster as defined by the Texas Department of Insurance, the claim-handling deadlines described above are extended for an additional 15 days.

**CENTRAL MUTUAL MS3037**

**4.** If we notify you that we will pay your claim, or part of your claim, we will pay within five "business days" after we notify you.

However, if payment of the claim or part of the claim is conditioned on your compliance with any of the terms under this Policy, we will make payment within five "business days" after the date you have complied with such terms.

**5.** We will notify the first Named Insured in writing of:

   **a.** An initial offer to settle a claim made or "suit" brought against any "insured" under Covered Autos Liability Coverage of this Policy. The notice will be given no later than the 10th day after the date on which the offer is made.

   **b.** Any settlement of a claim made or "suit" brought against the "insured" under Covered Autos Liability Coverage of this Policy. The notice will be given not later than the 30th day after the date of settlement.

As used in this condition, "business day" means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

**C. Changes In Uninsured/Underinsured Motorists Coverage**

All references to "Uninsured Motorists Coverage" in the title or text of any Coverage Form or endorsement thereto are changed to read "Uninsured/Underinsured Motorists Coverage".

**D. Changes In Trailer Interchange Coverage**

The following exclusion is added to Paragraph **B. Exclusions** of **Section III – Trailer Interchange Coverage** in the Motor Carrier Coverage Form and to Paragraph **B.2. Exclusions** of the Motor Carrier Endorsement if attached:

**Texas Controlled Substance Act**

We will not pay for "loss" due to or as a consequence of a seizure of a covered "auto" by federal or state law enforcement officers as evidence in a case against you under the Texas Controlled Substances Act or the federal Controlled Substances Act if you are convicted in such case.

**E. Changes In Garagekeepers Coverage**

If the Garagekeepers Coverage Endorsement or the Garagekeepers Coverage – Customers' Sound-receiving Equipment endorsement is attached, the following exclusion is added:

**Texas Controlled Substance Act**

We will not pay for "loss" due to or as a consequence of a seizure of a covered "auto" by federal or state law enforcement officers as evidence in a case against you under the Texas Controlled Substances Act or the federal Controlled Substances Act if you are convicted in such case.

CA0243 11 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## TEXAS CHANGES –  CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Paragraphs **2.** and **5.** of the **Cancellation** Common Policy Condition contained in Endorsement **IL 00 17** are replaced by the following:

  **2.** We may cancel this policy:

    **a.** By mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

    **b.** For the following reasons, if this policy does not provide coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001:

      **(1)** If this policy has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

      **(2)** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

        **(a)** Fraud in obtaining coverage;

        **(b)** Failure to pay premiums when due;

        **(c)** An increase in hazard within the control of the insured which would produce an increase in rate;

        **(d)** Loss of reinsurance covering all or part of the risk covered by the policy; or

        **(e)** If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

    **c.** For the following reasons, if this policy provides coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001:

      **(1)** If this policy has been in effect for less than 90 days, we may cancel this policy for any reason.

      **(2)** If this policy has been in effect for 90 days or more, or if it is a renewal or continuation of a policy issued by us, we may cancel this policy, only for the following reasons:

        **(a)** If the first Named Insured does not pay the premium or any portion of the premium when due;

        **(b)** If the Texas Department of Insurance determines that continuation of this policy would result in violation of the Texas Insurance Code or any other law governing the business of insurance in Texas;

        **(c)** If the Named Insured submits a fraudulent claim; or

        **(d)** If there is an increase in the hazard within the control of the Named Insured which would produce an increase in rate.

  **5.** If this policy is canceled, we will send the first Named Insured any premium refund due. The refund will be pro rata, subject to the policy minimum premium. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following condition is added:

  **Nonrenewal**

**CENTRAL MUTUAL MSJ 039**

1. We may elect to renew this policy except that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

2. If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

CA0449 11 16

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PRIMARY AND NONCONTRIBUTORY – OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following is added to the **Other Insurance** Condition in the Business Auto Coverage Form and the **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form and supersedes any provision to the contrary:

This Coverage Form's Covered Autos Liability Coverage is primary to and will not seek contribution from any other insurance available to an "insured" under your policy provided that:

**1.** Such "insured" is a Named Insured under such other insurance; and

**2.** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to such "insured".

**B.** The following is added to the **Other Insurance** Condition in the Auto Dealers Coverage Form and supersedes any provision to the contrary:

This Coverage Form's Covered Autos Liability Coverage and General Liability Coverages are primary to and will not seek contribution from any other insurance available to an "insured" under your policy provided that:

**1.** Such "insured" is a Named Insured under such other insurance; and

**2.** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to such "insured".

Copyright, Insurance Services Office, Inc., 2016
**CENTRAL MUTUAL MSJ 041**

CA0505 12 18

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS PUBLIC OR LIVERY PASSENGER CONVEYANCE AND TRANSPORTATION NETWORK SERVICES EXCLUSION

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

The following exclusion is added:

**Public Or Livery Passenger Conveyance And Transportation Network Auto**

This insurance does not apply to any covered "auto" while being used:

**1.** As a public or livery conveyance for passengers; or

**2.** By an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto".

**B. Changes In Physical Damage Coverage**

The following exclusion is added:

We will not pay for "loss" to any covered "auto" while being used:

**1.** As a public or livery conveyance for passengers; or

**2.** By an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto".

**C. Changes In Auto Medical Payments**

If Auto Medical Payments Coverage is attached, then the following exclusion is added:

**Public Or Livery Passenger Conveyance And Transportation Network Services**

This insurance does not apply to:

"Bodily injury" sustained by an "insured" "occupying" a covered "auto" while being used:

**1.** As a public or livery conveyance for passengers; or

**2.** By an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto".

**D. Changes In Uninsured/Underinsured Motorists Coverage**

If Uninsured/Underinsured Motorists Coverage is attached, then the following exclusion is added:

**Public Or Livery Passenger Conveyance And Transportation Network Services**

This insurance does not apply to any covered "auto" while being used:

**1.** As a public or livery conveyance for passengers; or

**2.** By an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto".

**CENTRAL MUTUAL MSJ 042**

**E. Changes In Personal Injury Protection Coverage**

If Personal Injury Protection Coverage is attached, then the following exclusion is added:

**Transportation Network Services**

This insurance does not apply to any covered "auto" while being used by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto".

**F. Additional Definitions**

As used in this endorsement:

**1.** "Occupying" means in, upon, getting in, on, out or off.

**2.** "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

CA2109 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS UNINSURED/UNDERINSURED MOTORISTS COVERAGE

For a "covered auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Texas, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
AUTO DEA;ERS  COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**SCHEDULE** *

**Limit Of Insurance**

$                                            Each "Accident"

**\* (If no entry appears above, information required to complete this endorsement will be shown in the Declarations or Change Endorsement as applicable to this endorsement.)**

**A. Coverage**

 **1.** We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury" sustained by an "insured" or "property damage" caused by an "accident." The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

 **2.** With respect to damages resulting from an "accident" with a vehicle described in Paragraph **d.** of the definition of "uninsured motor vehicle," we will pay under this coverage only if **a.** or **b.** below applies:

  **a.** The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or

  **b.** A tentative settlement has been made between an "insured" and the insurer of the vehicle described in Paragraph **d.** of the definition of "uninsured motor vehicle," and we:

   **1)** Have been given prompt written notice of such tentative settlement; and

   **2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

 **3.** Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us. If we and the Named Insured do not agree as to whether or not a vehicle is actually uninsured, the burden of proof as to that issue will be on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations or Change Endorsement as:

 **1.** An individual, then the following are insureds:

  **a.** The Named Insured and any "family member."

  **b.** Any other person "occupying" a "covered auto."

  **c.** Any person or organization for damages that person or organization is entitled to recover because of "bodily injury" sustained by a person described in **a.** or **b.** above.

 **2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

  **a.** The Named Insured for "property damage" only.

  **b.** Any person "occupying" a "covered auto."

  **c.** Any person or organization for damages that person or organization is entitled to recover because of "bodily injury" sustained by a person described in **b.** above.

**C. Exclusions**

**CENTRAL MUTUAL MSJ 044**

**1.** We do not provide Uninsured/Underinsured Motorists Insurance:

    **a.** For "bodily injury" sustained by:

        **1)** An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a "covered auto" for Uninsured/Underinsured Motorists Coverage under this Coverage Form;

        **2)** Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a "covered auto" for Uninsured/Underinsured Motorists Coverage under this Coverage Form; or

        **3)** Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured/Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

    **b.** For any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of an owner or operator of a vehicle described in Paragraph **d.** of the definition of "uninsured motor vehicle" in accordance with the procedure described in Paragraph **A.2.b.**

    **c.** For any person for the first $250 of the amount of damage to the property of that person as the result of any one "accident."

    **d.** For the use of a vehicle without a reasonable belief that the person using the vehicle is entitled to do so. This exclusion does not apply to an individual Named Insured or a "family member" while using a "covered auto."

    **e.** For any person for "bodily injury" or "property damage" resulting from the intentional acts of that person.

**2.** This coverage shall not apply directly or indirectly to benefit:

    **a.** Any insurer or self-insurer under any workers' compensation, disability or similar law.

    **b.** Any insurer of property.

## D. Limit Of Insurance

**1.** Regardless of the number of "covered autos," "insureds," policies or bonds applicable, claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured/Underinsured Motorists Coverage shown in the Schedule, Declarations or Change Endorsement. Subject to this maximum, our limit of liability will be the lesser of:

    **a.** The difference between the amount of a covered "insured's" damages for "bodily injury" or "property damage" and the amount paid or payable to that covered "insured" for such damages, by or on behalf of persons or organizations who may be legally responsible; or

    **b.** The applicable limit of liability for this coverage.

**2.** In order to avoid insurance benefits payments in excess of actual damages sustained, subject to only the limits set out in the Schedule, Declarations or Change Endorsement and other applicable provisions of this coverage, we will pay all covered damages not paid or payable under any:

    **a.** Workers' compensation, disability benefits or similar law;

    **b.** Automobile Medical Payments Coverage; or

    **c.** Personal Injury Protection Coverage.

**3.** Any payment under this coverage to or for an "insured" will reduce any amount that "insured" is entitled to recover for the same damages under this Policy's Covered Autos Liability Coverage.

**4. Special Provisions For Property Damage**

For any "property damage" "loss" to which the Physical Damage Coverage of this Policy (or similar coverage from another policy) and this coverage both apply, the Named Insured may choose the coverage from which damages will be paid. Such Named Insured may recover under both coverages, but only if:

    **a.** Neither one by itself is sufficient to cover the "loss";

    **b.** The Named Insured pays the higher deductible amount (but the Named Insured does not have to pay both deductibles); and

    **c.** The Named Insured will not recover more than the actual damages.

## E. Changes In Conditions

The conditions of the Policy are changed for Uninsured/Underinsured Motorists Insurance as follows:

**1.** The reference in the **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and the **Other Insurance - Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Forms to "other collectible insurance" is replaced by the following:

If there is other applicable similar insurance, we will pay only our share of the "loss." Our share is the proportion that our Limit Of Insurance bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible insurance.

**2.** **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Mogtor Carrier Coverage Forms and **Duties In The Event of Accident, Claim, Offense, Suit,Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

**a.** Promptly notify the police if a hit-and-run driver is involved.

**b.** Promptly send us copies of the legal papers if a "suit" is brought.

**c.** Take reasonable steps after "loss" to protect the covered "auto" and its equipment from further loss We will pay all reasonable expenses incurred to do this.

**d.** Permit us to inspect and appraise the damaged property before its repair or disposal.

**e.** Promptly notify us in writing of a tentative settlement between an "insured" and the insurer of the vehicle described in Paragraph **d.** of the defiition of "uninsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle.

**3.** **Transfer Of Rights Of Recovery Against Others To Us**  is changed by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights under this provision do not apply with respect to a tentative settlement between an "insured" and the insurer of an owner or operator of a vehicle described in Paragraph **d.** of the definition of "uninsured motor vehicle" if we:

**a.** Have been given written notice of a tentative settlement between the "insured" and the insurer of the "uninsured motor vehicle," and

**b.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**a.** That payment will be separate from any amount an "insured" is entitled to recover under the provisions of Uninsured/Underinsured Motorists Coverage, and

**b.** We also have the right to recover the advanced payment.

**4.** The following condition is added:

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured," then the matter may not be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two or the arbitrators will be binding. However, at any time prior to the arbitrators' decision, either party may revoke the agreement to arbitrate the matter.

**F. Additional Definitions**

The following are added to the **Definitions** section and have special meaning for Uninsured/Underinsured Motorists Insurance:

**1.** "Covered auto" means an "auto":

**a.** Owned or leased by the Named Insured; or

   **b.**  While temporarily used as a substitute for an owned "covered auto" that has been withdrawn from normal use because of its breakdown, repair, servicing, "loss" or destruction.

   Covered Autos Liability coverage of this policy must apply to the "covered auto."

   "Covered auto" includes "autos" (described in **a.** or **b.** above) for which Uninsured/Underinsured Motorists Insurance has not been rejected in writing.

**2.**  "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

**3.**  "Occupying" means in, upon, getting in, on, out or off.

**4.**  "Property damage" means injury to or "loss" of use or destruction of:

   **a.**  A "covered auto";

   **b.**  Property owned by the Named Insured or any "family member" of an individual Named Insure while contained in a "covered auto";

   **c.**  Property owned by any other person "occupying" the "covered auto" while contained in the "covered auto"; and

   **d.**  Any property owned by the Named Insured or "family member" of an individual Named Insured while contained in any "auto" not owned, but being operated, by such individual Named Insured or any "family member" of the individual Named Insured.

**5.**  "Uninsured motor vehicle" means a land motor vehicle or "trailer" of any type:

   **a.**  To which no liability bond or policy applies at the time of the "accident."

   **b.**  Which is a hit-and-run vehicle whose operator or owner cannot be identified. The vehicle must hit an "insured," a "covered auto" or a vehicle an "insured" is "occupying."

   **c.**  To which a liability bond or policy applies at the time of the "accident," but the bonding or insuring company denies coverage or is or becomes insolvent.

   **d.**  Which is an underinsured motor vehicle.  An underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident, but its limit of liability either:

   **1)**  Is not enough to pay the full amount the covered "insured" is legally entitled to recover as damages; or

   **2)**  Has been reduced by payment of claims to an amount which is not enough to pay the full amount the covered "insured" is legally entitled to recover as damages.

   However, "uninsured motor vehicle" does not include any vehicle or equipment:

   **a.** Owned by or furnished or available for the regular use of the Named Insured or a "family member" of an individual Named Insured;

   **b.** Owned or operated by a self insurer under an applicable motor vehicle law;

   **c.** Owned by any governmental body unless the operator of the vehicle is uninsured and there is no statute imposing liability for damage because of "bodily injury" or "property damage" on the governmental body for an amount not less than the Limit of Insurance for this coverage;

   **d.** Operated on rails or crawler treads;

   **e.** Designed mainly for use off public roads while not on public roads; and

   **f.** While located for use as a residence or premises.

Copyright, Insurance Services Office, Inc., 2013

CA2264 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS PERSONAL INJURY PROTECTION ENDORSEMENT

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Texas, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
AUTO DEALERS COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**SCHEDULE \***

| Limit Of Insurance (Each Insured) | Premium |
|---|---|
| $ | $ |
| $ | $ |
| $ | $ |
| $ | $ |
| **Description of Covered Autos** (Check appropriate box): | |
| ☐  Any "auto" owned by you. | |
| ☐  Any private passenger "auto" owned by you. | |
| ☐  Any motor vehicle to which are attached dealer's license plates issued to you. | |
| ☐  Any motor vehicle designated in the Declarations or Change Endorsement of the policy by the letters P.I.P. and a motor vehicle the ownership of which is acquired during the policy period by you as a replacement therefor. | |

**\* (Information required to complete this endorsement, if not shown above, will be shown in the Declarations or Change Endorsement.)**

**A. Coverage**

We will pay Personal Injury Protection benefits because of "bodily injury" resulting from a motor vehicle "accident" and sustained by a person "insured." Our payment will only be for "losses" or expenses incurred within three years from the date of the "accident."

Personal Injury Protection benefits consist of:

**1.**   Necessary expenses for medical and funeral services.

**2.**   80% of an "insured's" loss of income from employment. These benefits apply only if, at the time of the "accident," the "insured":

**a.**   Was an income producer; and

**b.**   Was in an occupational status.

These benefits do not apply to any "loss" after the "insured" dies.

Loss of income is the difference between:

**a.**   Income which would have been earned had the insured not been injured; and

**b.**   The amount of income actually received from employment during the period of disability.

If the income being earned as of the date of the "accident" is a salary or fixed remuneration, it shall be used in determining the amount of income which would have been earned. Otherwise, the average

Copyright, Insurance Services Office, Inc., 2012          CENTRAL MUTUAL Page 1 of 3

monthly income earned during the period (not more than 12 months) preceding the "accident" shall be used.

**3.**  Reasonable expenses incurred for obtaining services. These services must replace those an "insured" would normally have performed:

    **a.**  Without pay;

    **b.**  During a period of disability; and

    **c.**  For the care and maintenance of the family or household.

These benefits apply only if, at the time of the "accident," the "insured":

    **a.**  Was not an income producer; and

    **b.**  Was not in an occupational status.

These benefits do not apply to any "loss" after the "insured" dies.

**B.  Who Is An Insured**

    **1.**  You or any "family member" while "occupying" or when struck by an "auto."

    **2.**  Anyone else "occupying" a "covered auto" with your permission.

**C.  Exclusions**

We will not provide Personal Injury Protection Coverage for any person for "bodily injury" sustained:

    **1.**  In an "accident" caused intentionally by that person.

    **2.**  By that person while in the commission of a felony.

    **3.**  By that person while attempting to elude arrest by a law enforcement official.

    **4.**  While "occupying" or when struck by, any motor vehicle (other than a "covered auto") which is owned by you.

    **5.**  By a "family member" while "occupying" or when struck by any motor vehicle (other than a "covered auto") which is owned by a "family member."

**D.  Limit Of Insurance**

Regardless of the number of owned "covered autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for "bodily injury" for each "insured" in any one "accident" is the limit of Personal Injury Protection shown in the Schedule or in the Declarations or Change Endorsement.

**E.  Changes In Conditions**

The Conditions of the policy are changed for Personal Injury Protection as follows:

    **1.**  The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition: However, our rights only apply against a person causing or contributing to the "accident" if, on the date of the "loss," the minimum limits required by Texas law have not been estabished for a motor vehicle involved in the "accident" and operated by that person.

    **2.**  The reference in the **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance - Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Forms to "other collectible insurance" is replaced by the following:

If there is other Personal Injury Protection Insurance, we will pay only our share.  Our share is the proportion that our Limit of Insurance bears to the total of all applicable limits.  However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible Personal Injury Protection Insurance.

 Copyright, Insurance Services Office, Inc., 2012

**CENTRAL MUTUAL MSJ 049**

**3.** The following conditions are added:

    **a. Payment Provision**

        Loss Payment benefits are payable:

        **1)** Not more frequently than every two weeks; and

        **2)** Within 30 days after satisfactory proof of claim is received.

    **b. Assignment Of Benefits**

        Payments for medical benefits will be paid directly to a physician or other health care provider if we receive a written assignment signed by the covered person to whom such benefits are payable.

**F.  Additional Definitions**

The following are added to the **Definitions** section and have special meaning for Personal Injury Protection:

**1.** "Covered auto" means an "auto":

    **a.** Owned or leased by you; or

    **b.** While temporarily used as a substitute for an owned "covered auto" that has been withdrawn fr normal use because of its breakdown, repair, servicing, loss or destruction.

Covered Autos Liability coverage of this policy must apply to the "covered auto."

"Covered Auto" includes "autos" (described in Paragraphs **a.**  and **b.** above) for which Personal Injury Protection coverage has not been rejected in writing.

**2.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

**3.** "Occupying" means in, upon, getting in, on, out or off.

 Copyright, Insurance Services Office, Inc., 2012

**CENTRAL MUTUAL MSJ 050**

CA2385 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EXCLUSION OF TERRORISM INVOLVING
## NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM

This endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, is enclosed in quotation marks:

  **1.** "Terrorism" means activities against persons, organizations or property of any nature:

    **a.** That involve the following or preparation for the following:

      **(1)** Use or threat of force or violence; or

      **(2)** Commission or threat of a dangerous act; or

      **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

    **b.** When one or both of the following apply:

      **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

  **2.** "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

**B.** The following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

  **1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

  **2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

  **3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**CENTRAL MUTUAL MSJ 051**

    **4.**  Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

**C.**  In the event of any incident of "terrorism" that is not subject to this exclusion, coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

Copyright, Insurance Services Office, Inc., 2013

**CENTRAL MUTUAL MSJ 052**

CA2394 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SILICA OR SILICA-RELATED DUST EXCLUSION FOR COVERED AUTOS EXPOSURE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.**   The following exclusion is added to **Covered Autos Liability Coverage**:

**Silica or Silica-related Dust Exclusion For Covered Autos Exposure**

This insurance does not apply to:

**1.**   "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust."

**2.**   "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust."

**3.**   Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust," by any "insured" or by any other person or entity.

**B.   Additional Definitions**

As used in this endorsement:

**1.**   "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.**   "Silica-related dust" means a mixture or combination of silica and other dust or particles.

          Copyright, Insurance Services Office, Inc., 2011

**CENTRAL MUTUAL MSJ 053**

CA9995 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**TEXAS SUPPLEMENTARY DEATH BENEFIT**

This endorsement modifies insurance provided under the following:

AUTO MEDICAL PAYMENTS COVERAGE
PERSONAL INJURY PROTECTION COVERAGE

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.  Coverage**

We will pay under the provisions of personal injury protection insurance and/or auto medical payments insurance as afforded by this policy except as limited by this endorsement.

We will pay a supplementary death benefit equal to the limit shown for the coverages  but not exceeding ten thousand dollars ($10,000) per person because of death:

**1.**  Caused by an "auto" "accident"; and

**2.**  Sustained by an "insured" while wearing a "seat belt" or protected by an "airbag."

We will pay the benefit, if death from an "auto" "accident" occurs within three years of the date of such "accident."

**B.  Proof Of Claim For Death Benefit**

The "beneficiary" must furnish us with proof of death of the "insured," accompanied by a policy report or other suitable proof, that the "insured" at the time of the "auto" "accident" was wearing a "seat belt" or protected by an "air bag."

**C.  Other Insurance**

Any amounts payable under the supplementary death benefit shall not be reduced by any other amounts paid or payable under this policy.

**D.  Additional Definitions**

The following are added to the **Definitions** section  and have special meaning for Supplementary Death Benefit:

**1.**  "Insured" as used in this endorsement means the same persons who are covered under auto medical payments insurance, and/or  personal injury protection insurance.

**2.**  "Seat belt" means manual or automatic safety belts or seat and shoulder restraints or a child restraint device.

**3.**  "Airbag" is a functioning airbag designed to protect the occupant of a seat in an "auto."

**4.**  "Beneficiary" means (in order of priority of payment):

**a.**  The surviving spouse if a resident in the same household as the deceased at the time of the "accident", or

**b.**  If the deceased is an unmarried minor, either of the surviving parents who had legal custody at the time of the "accident", or

**c.**  The estate of the deceased.

**CENTRAL MUTUAL MSJ 054**

3-2546 03 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BAP PLUS COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the:

BUSINESS AUTO COVERAGE FORM

These coverages are subject to the terms and conditions applicable to coverage  in this policy except as provided below.

**A.   Hired Auto Physical Damage Coverage**

**1.**   If hired "autos" are covered "autos" for Liability Coverage in this policy or another policy provided by us and if Comprehensive, Specified Causes of Loss or Collision coverages are provided under this coverage form for any "auto" you own, then the Physical Damage Coverages provided are extended to "autos" you hire, subject to the following limit.

The most we will pay for "loss" to any hired "auto" is **$75,000** or Actual Cash Value or Cost of Repair, whichever is smallest, minus a deductible. The deductible will be equal to the largest deductible applicable to any owned "auto" for that coverage. No deductible applies to "loss" caused by fire or lightning.  Subject to the above limit, and deductible, we will provide coverage equal to the broadest coverage applicable to any covered "auto" you own.

**2.**   Changes In Liability Coverage:

The following is added to the Who Is An Insured Provision:

An "employee" of yours is an "insured" while operating an "auto" hired or rented under a contract or agreement in that "employee's" name, with your permission, while performing duties related to the conduct of your business.

**3.**   Changes In General Conditions:

Paragraph **5.b.** of the Other Insurance Condition in the Business Auto and Business Auto Physical Damage Coverage Forms are replaced by the following:

For Hired Auto Physical Damage Coverage, the following are deemed to be covered "autos" you own:

**1.**   Any covered "auto" you lease, hire, rent or borrow; and

**2.**   Any covered "auto" hired or rented by your "employee" under a contract in that individual "employee's" name, with your permission, while performing duties related to the conduct of your business.

However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto."

**B.   Hired Auto Physical Damage - Additional Loss of Use Expenses**

Paragraph A.4.b. of Section III - Physical Damage Coverage is amended to provide a limit of $85 per day and a maximum limit of $1,350.

**C.   Physical Damage - Additional Transportation Expense Coverage**

Paragraph A.4.a. of SECTION III - PHYSICAL DAMAGE COVERAGE is amended to provide a limit of **$50 per day** and a **maximum limit of $1,000.**

**D.   Towing and Labor Costs Coverage**

We will pay up to $75 for towing and labor costs incurred each time an owned "auto" is disabled.  However, the labor must be performed at the place of disablement.

**E.   Parked Auto Collision Coverage (Waiver of Deductible)**

The deductible does not apply to "loss" caused by collision to such covered "auto" while it is:

**1.**   In the charge of an "insured";

**2.**   Legally parked; and

**3.**   Unoccupied.

The total amount of the damage to the covered "auto" must exceed the deductible shown in the Declarations or Change Endorsement.

This provision does not apply to any "loss" if the covered "auto" is in the charge of any person or organization engaged in the automobile business.

**F.   Rental Reimbursement Coverage**

When there is a "loss" to a covered "auto," we will pay for rental reimbursement expenses incurred by you for the rental of an "auto." Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto." No deductibles apply to this coverage.

This coverage applies only:

**1.**   For those expenses incurred during the policy period beginning 24 hours after the loss;

**2.**   To necessary and actual expenses incurred;

**3.**   To a "loss" for which we also pay a "loss" under Physical Damage Coverage - Comprehensive Coverage, Specified Causes of Loss Coverage or Collision Coverage; and

**4.**   If there are no spare or reserve "autos" available to you for your operations.

Our payment will be limited to that period of time reasonably required to repair or replace the covered "auto." We will pay up to **$75 per day** to a **maximum of $1,500.**

If "loss" results from total theft of a covered "auto" we will pay under this coverage only that amount of rental reimbursement expenses which are not already provided under the Physical Damage Coverage Extension.

**G.   Difference in Value Coverage - Loan/Lease Gap**

In the event of a total "loss" to a covered "auto," the Limit of Insurance provision in SECTION III, PHYSICAL DAMAGE COVERAGE, is replaced by the following:

LIMIT OF INSURANCE

**1.**   The most we will pay for "loss" in any one "accident" is the greater of:

    **a.**   The amount due under the terms of the loan/lease to which a covered "auto" is subject,  but not to include:

        **i)**   Overdue loan/lease payments,

        **ii)**   Financial penalties imposed under the lease due to high mileage, excessive use or abnormal wear and tear,

        **iii)**   Security deposits not refunded by the lessor,

        **iv)**   Cost of extended warranties, Credit Life Insurance, Accident or Disability Insurance purchased with the loan or lease, or

        **v)**   Carry-over balances from previous loans or leases.

    **b.**   The actual cash value of the damaged or stolen property as of the time of the "loss."

**2.**   An adjustment for depreciation and physical condition will be made in determining actual cash value  at the time of "loss."

For the purposes of this coverage, physical damage resulting in total "loss" means a "loss" in which the cost of repairs plus the salvage value exceeds the actual cash value.

This coverage shall apply only to the original lease written on a covered "auto" not previously titled.

**H.   Glass Repair - Waiver of Deductible**

Under Paragraph D. - Deductible of SECTION III - PHYSICAL DAMAGE COVERAGE, the following is added:

No deductible applies to glass damage if the glass is repaired rather than replaced.

**I.   Employees as Insureds**

Paragraph A.1 - Who is an Insured of SECTION II - COVERED AUTOS LIABILITY COVERAGE is amended to add:

    **d.**   Any employee of yours while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs. Coverage is excess over any other collectible insurance.

**J.   Fellow Employee Coverage**

The Fellow Employee Exclusion contained in SECTION II - COVERED AUTOS LIABILITY COVERAGE does not apply.

**K.   Doubled Automobile Medical Payments Coverage**

If you have purchased Automobile Medical Payments Coverage, the limit of insurance for that coverage as shown in the Declarations or Change Endorsement will be doubled in the event an "insured" is injured in an "accident" while within an "auto" and is:

**1.**  Wearing a seat belt; or

**2.**  The "auto" is equipped with passive restraints.

**L.   Waiver Of Transfer Of Rights Of Recovery Against Others To Us**

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US, SECTION **IV** CONDITION **5.,** is amended by the addition of the following:

We waive the right of recovery we may have against any person or organization because of payments we make for injury or damage arising out of the ownership, maintenance or use of a covered auto. This waiver applies only to the person or organization which, before the loss, you have agreed in writing to waive your right of recovery.

**M.   Additional Insured - Automatic Status**

**1.**  Any "leased auto" will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

**2.**  Paragraph A.1 - Who is an Insured of SECTION II - COVERED AUTOS LIABILITY COVERAGE is amended to include as an insured any person or organization (called additional insured) whom you are required to add as an additional insured on this policy under:
A written contract, permit or agreement, and

   **a.**  Currently in effect or becoming effective during the term of this policy; and

   **b.**  Executed prior to the "bodily injury," "property damage," "personal injury and advertising injury."

**3.**  The insurance provided to the additional insured is limited as follows:

   **a.**  The Limits of Insurance applicable to the additional insured are those specified in the written contract or agreement or in the Declarations for this policy, whichever is less.  These Limits of Insurance are inclusive and not in addition to the Limits of Insurance shown in the Declarations.

**4.   Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to   you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

**N.  Loss Payee - Lessor**

**1.**  We will pay, as interest may appear, you and the lessor for "loss" to a "leased auto."

**2.**  The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omission on your part.

**3.**  If we make any payment to the lessor, we will obtain his or her rights against any other party.

**4.   Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

**O.** **Tapes, Records and Discs Coverage** SECTION III - PHYSICAL DAMAGE COVERAGE is amended as follows:

**1.** The exclusion referring to tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment does not apply.

**2.** The following is added to Paragraph A. Coverage:

Under Comprehensive Coverage we will pay for "loss" to tapes, records, discs or other similar devices used with audio, visual or data electronic equipment.  We will pay only if the tapes, records, discs or other similar audio, visual or data electronic devices:

**a.** Are your property or that of a family member, and

**b.** Are in a covered "auto" at the time of "loss."

**3.** The most we will pay for "loss" is $250.

**4.** No Physical Damage Coverage deductible applies to this coverage.

**P.** **Audio, Visual and Data Electronic Equipment Coverage** SECTION III - PHYSICAL DAMAGE COVERAGE is amended as follows:

**1.** The sublimit in Paragraph **C.1.b.** of the Limit Of Insurance provision is increased to $2,500.

**3-2637 05 17**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PREMIUM AUDIT ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
AUTO DEALERS COVERAGE FORM

Paragraph **B.6.** Premium Audit of Section **IV.,** Business Auto Conditions or Section **IV.** Auto Dealers Conditions is replaced by the following:

**6.**   **Premium Audit**

**a.**   The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began.  We will compute the final premium due when we determine your actual exposures.  The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any.  This balance will be due fourteen days after being billed.  If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.**   If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**3-3103 05 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PUNITIVE DAMAGES EXCLUSION

This endorsement modifies insurance provided under the following:

UNINSURED MOTORISTS COVERAGE
UNDERINSURED MOTORISTS COVERAGE

The following is added to Exclusions:

This insurance does not apply to punitive or exemplary damages.

 Copyright, Insurance Services Office, Inc.                      **CENTRAL MUTUAL MSJ 060**

# EXHIBIT 2

CENTRAL MUTUAL MSJ 061

4/14/2021 3:37 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 52464649
By: F Abdul-Bari
Filed: 4/14/2021 3:37 PM

CAUSE NO. 2020-51214

| | | |
|---|---|---|
| ROY ROBERSON | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| AV WAREHOUSING & CRATING, LLC | § | |
| and ANTHONY PALACIOUS | § | |
| *Defendants* | § | 269TH JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST AMENDED PETITION AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, ROY ROBERSON, (hereinafter referred to as "Plaintiff," or by name), complaining of AV WAREHOUSING & CRATING, LLC and ANTHONY PALACIOUS (collectively "Defendants"), and for cause of action would respectfully show the Court the following:

### I.
### DISCOVERY CONTROL PLAN

Discovery in this matter may be conducted under Level 3 of the Texas Rules of Civil Procedure.

### II.
### PARTIES

Plaintiff, ROY ROBERSON ("Plaintiff" or "Roberson") is a resident of Texas.

Defendant, AV WAREHOUSING & CRATING, LLC ("AV") is, and at all times material hereto was, a corporation organized under the laws of the State of Texas and actively doing business in the State of Texas. It has answered this lawsuit and is before the court for all purposes.

Defendant ANTHONY PALACIOS ("Palacios" or "Defendant Driver") is a resident of Harris County, Texas. He has answered this lawsuit and is before the court for all purposes.

**CENTRAL MUTUAL MSJ 062**

To the extent that any of the above-named Defendant(s) are conducting business pursuant to a trade name or assumed name, then suit is brought against Defendant(s) pursuant to the terms of Rule 28 of the *Texas Rules of Civil Procedure*, and Plaintiff hereby demands that upon answering the suit, that Defendant(s) answer in both Defendant(s)' correct legal name and Defendant(s)' assumed name(s).

### III.
### JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this lawsuit, and the damages sought by Plaintiff in this cause of action are within the jurisdictional limits of the Court.

Venue is proper in Harris County, Texas, pursuant to *Texas Civil Practices and Remedies Code* Chap. § 15.002(a)(1) because it is the county in which all, or a substantial part, of the events and/or omissions giving rise to this lawsuit occurred. Lastly, no mandatory venue provision applies.

### IV.
### FACTS

On or about August 7, 2020 at approximately 1:00 p.m., at or near the intersection of Hartwick Rd. and Hirsch Rd., in Houston, Harris County, TX, a commercial vehicle, which was owned by AV and which was being permissively operated by an authorized driver, PALACIOS, was speeding above the posted speed limit of 35 mph and crashed into the vehicle that was being operated by ROBERSON.

In this regard, AV had taken a large commercial vehicle to Laredo Auto Truck Repair ("LAREDO") for repair work. Upon information and belief, PALACIOS was working for LAREDO and had taken the large commercial vehicle to be washed, was returning the large commercial truck to LAREDO, was speeding above the speed limit of 35 mph and violently

2

CENTRAL MUTUAL MSJ 063

crashed into ROBERSON'S vehicle. ("Wreck") Defendants' failure(s) to use ordinary care in the entrustment and operation of AV's large commercial truck was a proximate cause of the Wreck and Plaintiff's resulting damages.

## V.
## CAUSES OF ACTION AGAINST AV AND PALACIOS

*Negligence*

At the time and place in question, AV, by and through its permissive driver, PALACIOS, was guilty of the following separate acts of negligence, each of which, singularly or in combination, were a proximate cause of the injuries, harms and losses alleged herein.

Additionally, PALACIOS, as a permissive driver of the AV owned large commercial truck, was using it with AV's knowledge, consent and approval.  Further, PALACIOS was guilty of negligence for the following reasons:

a. Failing to control his speed;

b. Driver inattention;

c. Failing to maintain a proper lookout as a person using ordinary care would have done;

d. Failing to drive the posted speed limit;

e. Failing to heed traffic laws as a person using ordinary care would have done under the same or similar circumstances;

f. Failing to take appropriate evasive action to avoid the Wreck such as a reasonably prudent person would have done under the same or similar circumstances; and

g. Operating the AV owned large commercial truck with willful or wanton disregard for the safety of other drivers using Texas highways, including Plaintiff;

Plaintiff would show that AV'S omissions or acts through its officers, vice-principals, employees, permissive drivers or agents, as set forth herein and otherwise, constitutes negligence,

3

each and all of which were a proximate cause of the Wreck and Plaintiff's resulting injuries, harms and losses. These acts and/or omissions include but are not limited to the following:

a.  Failing to develop and implement policies and procedures relating to the safe use of its fleet of company vehicles by inadequately trained and/or inexperienced permissive drivers operating large commercial trucks over whom it exercised control;

b.  Failing to adequately and/or properly train and supervise its permissive drivers over whom it exercised control in connection with the operation of its fleet of company vehicles;

c.  Failing to ensure that inexperienced permissive drivers over whom it exercised control had the requisite amount of experience and training to operate one of its fleet of large company vehicles;

d.  Failing to adequately train, manage, direct, and/or supervise its permissive drivers over whom it exercised control who were operating any of its fleet of large company vehicles;

e.  Failing to exercise reasonable care in the supervision of permissive drivers over whom it exercised control in connection with the operation of its fleet of large company vehicles;

f.  Failing to reasonably exercise the supervisory right of its permissive drivers over whom it exercised control in connection with the operating of its fleet of large company vehicles;

g.  Failing to stop its permissive drivers over whom it exercised control from operating any of its fleet of company vehicles in an unsafe manner and failing to train and instruct permissive drivers over whom it exercised control to operate its fleet of large company vehicles in a manner that would have prevented the serious injuries sustained by Plaintiff on the date of the Wreck;

h.  Failing to comply with its policies and procedures relating to conducting safety meetings with its permissive drivers over whom it exercised control in connection with the operation of its fleet of large vehicles;

i.  Failing to properly implement Job Safety Analysis ("JSAs") relating to the safe operation of its fleet of company vehicles for its permissive drivers over whom it exercised control;

j.  Failing to ensure a competent, adequately trained permissive driver over whom it exercised control, was operating the subject large commercial truck on the date of the Wreck;

4

CENTRAL MUTUAL MSJ 065

k.   Failing to ensure a competent supervisor or other worker was assigned and was working at all times to safely monitor its permissive drivers over whom it exercised control, to ensure permissive drivers over whom it exercised control, could safely operate its fleet of large company vehicles;

l.   Failing to require its permissive drivers over whom it exercised control could properly and safely operate its fleet of large company vehicles on the date of the Wreck;

m.   Failing to develop and/or implement a post-accident drug and/or alcohol testing policy for its permissive drivers over whom it exercised control;

n.   Failing to perform a post-accident drug and/or alcohol test or take other remedial action relating the permissive driver PALACIOS after the Wreck;

o.   Failing to ensure that a safety meeting occurred prior to the permissive driver PALACIOS's operation of the large company vehicle on the date of the Wreck;

p.   Failing to have policies and procedures in place, including obtaining MVRs and performing criminal background checks on permissive drivers who were entrusted with operating its fleet of large company vehicles in the furtherance of its for-profit business interests;

q.   Failing to conduct a road test of PALACIOS prior to allowing him to permissively operate a large AV owned or leased vehicle; and

r.   Failing to comply with recognized industry standards, including American National Standard-ANSI/ASSE Standard Z15.1-2017- S*afe Practices of Motor Vehicle Operation.*

s.   Failing to develop and implement any standards for the Safe Practices of Motor Vehicle Operations per appropriate national standards for companies such as AV, including failing to develop written safety policies, failing to enforce those policies if they existed at the time of the Wreck, failing to develop organizational safety rules and proper orientation and training permissive drivers driving company vehicles, failing to have a distracted driving policy, failing to perform background checks on permissive drivers driving company vehicles, failing to develop and implement incident reporting and analysis policies, failing to develop and implement a policy on analysis of causal and contributing factors to incidents involving company vehicles and failing to develop and implement policies on the determination of whether incidents are preventable;

t.   Committing other acts and/or omissions of negligence, which will be specified at the time of trial.

5

CENTRAL MUTUAL MSJ 066

All of the above identified acts or omissions on the part of AV and/or its agents, servants, employees, vice-principals, permissive drivers and/or hired hands over whom it exercised control, including PALACIOS, was or were a proximate cause of the Wreck and the resulting injuries, harms and losses sustained by the Plaintiff.

Plaintiff would show that each of the foregoing acts and/or omissions constituted negligence and that one, more than one, or all of such acts and/or omissions and various combinations thereof were a proximate cause of the Wreck, and the serious, debilitating and life altering injuries, harms and losses sustained by Plaintiff. Plaintiff sustained injuries to his left knee, left elbow, left shoulder, head, neck and lower back and he also sustained a traumatic brain injury ("TBI").  Plaintiff has sought and continues to seek reasonable and necessary medical treatment for the injuries he sustained in this crash.

*Gross Negligence*

Defendant, AV, by and through its vice-principals negligently allowed PALACIOS to permissively operate one of its large company owned vehicles without conducting any investigation of his driving ability and without any knowledge of his driving ability or prior driving history.

Additionally, AV, by and through its vice-principals, had actual knowledge that it was responsible for ensuring PALACIOS, as a permissive driver of one of its large company vehicles, complied with all safety policies and procedures of AV, including, but not limited to, defensive driving techniques and driving safety policies.  However, it failed in all respects with regard to ensuring PALACIOS was aware of its defensive driving techniques and driving safety policies because it allowed him to operate a large company vehicle without ever obtaining an MVR of PALACIOS or performing any background investigation of a 19-year-old young man's ability to

6

operate one of its large commercial trucks in the furtherance of its for-profit business. In this regard, AV allowed him to permissively drive a large company vehicle at the age of 19 when it knew, or reasonably should have known, he was not qualified to operate a large commercial truck or whether he had the capability of safely operating a large commercial truck. AV's actual knowledge, by and through its vice-principals, employees, agents and/or servants, of its duties and obligations and its non-compliance with these duties and obligations is a clear indication it knew allowing PALACIOS to permissively operate one of its owned or leased fleet of large commercial vehicles without ensuring the PALACIOS possessed even the most basic safe driving skills posed a foreseeable, avoidable, and unreasonable risk to other's drivers' safety, including Plaintiff.

Plaintiff would show that the conduct of AV, by and through the permissive driver, PALACIOS, on the date of the Wreck, including, but not limited to, PALACIOS's failure to control his speed, failure to take evasive action, failure to timely apply his brakes, being an inattentive driver, failing to comply with basic safe driving policies, failing to comply with AV's safety policies and procedures and not ensuring PALACIOS was properly qualified and trained to operate one of its fleet of large company vehicles on Texas highways constitutes "gross neglect" as defined by Tex. Civ. PAV. & Rem. Code Section 41.003(a)(3). The acts and omissions of AV, by and through its vice-principals, agents, servants and/or employees, on the date of the Wreck (i) when viewed objectively from the standpoint of the actor at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (ii) of which the actor had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others. As a result of this conscious indifference of AV and its vice-principals, agents, servants, employees, and/or statutory employees on the date of the Wreck, Plaintiff is entitled to recover exemplary damages.

CENTRAL MUTUAL MSJ 068

Plaintiff would show that the conduct of PALACIOS on the date of the Wreck, including, but not limited to, failing to control his speed, failing to take evasive action, failing to timely apply his brakes, being an inattentive driver, failing to comply with basic safe driving policies, failing to comply with AV's safety policies and procedures, and other acts identified above, thereby causing this violent Wreck, constitutes "gross neglect" as defined by Tex. Civ. PAV. & Rem. Code Section 41.003(a)(3).

PALACIOS was aware of the illegality, and more importantly, the safety concerns of speeding in a high-volume traffic area while permissively operating one of the AV owned large commercial trucks. PALACIOS knew that speeding, failing to control his speed, failing to take evasive action, failing to timely apply his brakes, being an inattentive driver, failing to comply with basic safe driving policies, failing to comply with AV's safety policies and procedures, among other acts identified above, involved infringing upon the rights, safety or welfare of others, including the Plaintiff.

The acts and omissions of PALACIOS on the date of the Wreck, including, but not limited to, failing to control his speed, failing to take evasive action, failing to timely apply his brakes, being an inattentive driver, failing to comply with basic safe driving policies, failing to comply with AV's safety policies and procedures, among other acts identified above, while operating with one of AV's fleet of large company vehicles (i) when viewed objectively from the standpoint of the actor at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (ii) of which the actor had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.  As a result of this conscious indifference of PALACIOS, Plaintiff is entitled to recover exemplary damages.

CENTRAL MUTUAL MSJ 069

*Negligent Entrustment*

Plaintiff alleges that AV negligently entrusted the truck PALACIOS was permissively operating on the date of the Wreck to PALACIOS.  AV owned, leased and/or exercised control of whom was allowed to operate the AV owned truck and trailer and PALACIOS was permissively operating this large commercial company truck at the time of the Wreck.  Plaintiff asserts that AV entrusted the large commercial truck to PALACIOS on the date of the Wreck, that PALACIOS was an unlicensed, incompetent or reckless driver at the time of the entrustment, that AV knew or should have known PALACIOS was an unlicensed, incompetent, or reckless driver, that PALACIOS was negligent in causing the Wreck and that PALACIOS's negligence in causing the Wreck was a proximate cause of Plaintiff's injuries, harms and losses.

## VI.
## DAMAGES

Plaintiff sustained injuries and damages as a proximate result of Defendants' conduct, and Plaintiff will respectfully request that the Court and Jury determine the amount of loss Plaintiff has incurred in the past and in the future, not only from a financial standpoint but also in terms of good health and freedom from pain and worry. There are certain elements of damages which are provided for by law that Plaintiff is entitled to have the Jury in this case consider separately to determine the sum of money for each element that will fairly and reasonably compensate Plaintiff for the injuries and damages and losses incurred and to be incurred.

From the date of the incident in question up to the time of trial of this case, such elements of damages to be considered separately and individually for the purpose of determining the sum of money to compensate Plaintiff are as follows:

    a.  The physical pain that Plaintiff has suffered as a result of the Wreck up to the time of trial;

CENTRAL MUTUAL MSJ 070

b.  The mental anguish that Plaintiff has suffered from the date of the Wreck up to the time of trial;

c.  The amount of reasonable medical, custodial, and attendant care expenses necessarily incurred in the treatment of Plaintiff's injuries from the date of the Wreck up to the time of trial;

d.  The damages resulting from the physical impairment suffered by Plaintiff and his resulting inability to do those tasks and services that he would ordinarily have been able to perform;

e.  The damages resulting from the physical disfigurement suffered by Plaintiff as a result of the Wreck up to the time of trial;

f.  The pecuniary value of the household and other services that Plaintiff would have performed between the time of the Wreck and the time of trial; and,

g.  Lost wages in the past.

From the time of time of trial, the elements of damages to be separately considered which Plaintiff will sustain in the future beyond the time of trial are such of the following that are shown by a preponderance of the evidence:

a.  The physical pain that Plaintiff will suffer beyond the time of trial;

b.  The mental anguish that Plaintiff will suffer in the future beyond the time of trial;

c.  The reasonable value of medical, custodial and attendant care expenses that will necessarily be incurred in the treatment of Plaintiff's injuries in the future beyond the time of trial;

d.  The damages resulting from the physical impairment that Plaintiff will continue to suffer in the future and her resulting inability to do those tasks and services that he ordinarily would have been able to perform beyond the time of trial of this case;

e.  The damages resulting from the physical disfigurement that will be suffered by Plaintiff beyond the time of trial of this case;

f.  The pecuniary value of the household and other services that Plaintiff would have performed beyond the time of trial; and

**CENTRAL MUTUAL MSJ 071**

Upon trial of this case, the evidence will show that the Plaintiff has been damaged and will be damaged in a sum greatly in excess of the minimal jurisdictional limits of this Honorable Court, for which amount Plaintiff now brings suit.

All of Plaintiff's injuries, harms and losses as set forth herein above were proximately caused by the negligence and gross negligence of Defendants.  Accordingly, Plaintiff is bringing this suit for just, reasonable, and adequate compensation against Defendants, as well as for exemplary damages. Additionally, pursuant to Rule 47(c)(5) of the Texas Rules of Civil Procedure, Plaintiff is seeking monetary relief over $1,000,000.00. However, the jury in this matter will ultimately determine what amount of fair and reasonable damages should be awarded to Plaintiff for his injuries, harms and losses as a result of this Wreck.   Plaintiff reserves the right to amend this pleading to conform it to the jury's verdict no matter the amount awarded by the jury. Plaintiff seeks all other elements of damages not specifically identified herein to which Plaintiff is entitled under Texas law, including prejudgment interest, post-judgment interest, all costs of court, and any and all other legal and equitable relief, as well as for judgment against Defendant, and for all other relief to which Plaintiff is justly entitled.

## VII.
## <u>RULE 193.7 NOTICE</u>

Pursuant to Rule 193.7 of the *Texas Rules of Civil Procedure*, Plaintiff hereby gives actual notice to all Defendants that any and all documents and materials produced in response to written discovery may be used as evidence in this case; and, that any such materials may be used as evidence against the party producing the document or materials at any pretrial proceeding and/or trial of this matter without the necessity of authenticating the document and/or materials produced in discovery.

11

**CENTRAL MUTUAL MSJ 072**

## VIII.
## JURY DEMAND

Pursuant to *Texas Rules of Civil Procedure* 216, Plaintiff demands a jury trial. The requisite jury fee has been paid.

## IX.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that upon final trial, Plaintiff recovers the damages, both jointly and severally, as specified above, from the Defendants, plus costs of court, interest at the legal rate, both pre-judgment and post-judgment, exemplary damages and have such other and further relief, general and special, at law and in equity, to which Plaintiff may show himself to be justly entitled under the facts and circumstances.

CENTRAL MUTUAL MSJ 073

Respectfully submitted,

By:   */s/ Daryl L. Derryberry*_____
      **DERRYBERRY ZIPS WADE, PLLC**
      1043 Asher Way, Suite 200
      Tyler, Texas 75703
      (903) 526-2767
      (903) 526-2714 – Facsimile

      **DARYL L. DERRYBERRY**
      State Bar No. 05774600
      dld@dzwlaw.com
      **CRAIG D. ZIPS**
      State Bar No. 00797729
      czips@dzwlaw.com

      **AND**

      **THE LAW OFFICES OF JIM EDWARDS**
      550 Westcott, Suite 470
      Houston, Texas 77007
      (832) 742-9153
      (832) 565-7925
      firm@jimedwardslaw.com

      **JAMES R. EDWARDS**
      State Bar No. 24078466
      **ATTORNEYS FOR PLAINTIFF**

13

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served via electronic filing, on this 14th of April 2021, to all counsel of record.

**_/S/ Daryl L. Derryberry_____**
**Daryl L. Derryberry**

Larry E. Cotten
Craig L. Brown
Cotten & Schmidt, LLP
100 Energy Way, Suite 2000
Ft. Worth, Texas 76102
lcotton@cottenschmidt.com
cbrown@cottenschmidt.com

14

**CENTRAL MUTUAL MSJ 075**

# EXHIBIT 3

CENTRAL MUTUAL MSJ 076

9/28/2021 4:51 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 57685851
By: Rhonda Momon
Filed: 9/28/2021 4:51 PM

CAUSE NO. 2020-51214

| | | |
|---|---|---|
| ROY ROBERSON | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| AV WAREHOUSING & CRATING, LLC | § | |
| and ANTHONY PALACIOS | § | |
| *Defendants* | § | 269TH JUDICIAL DISTRICT |

## **PLAINTIFF'S THIRD AMENDED PETITION AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, ROY ROBERSON, (hereinafter referred to as "Plaintiff," or by name), complaining of ANTONIO CARDONIA PALACIOS d/b/a LAREDO AUTO TRUCK REPAIR and ANTHONY PALACIOS (collectively "Defendants"), and for cause of action would respectfully show the Court the following:

## I.
## **DISCOVERY CONTROL PLAN**

Discovery in this matter may be conducted under Level 3 of the Texas Rules of Civil Procedure.

## II.
## **PARTIES**

Plaintiff, ROY ROBERSON ("Plaintiff" or "Roberson") is a resident of Texas.

Defendant, ANTONIO CARDONIA PALACIOS d/b/a LAREDO AUTO TRUCK REPAIR ("Laredo") is, and at all times material hereto was, a corporation organized under the laws of the State of Texas and actively doing business in the State of Texas. Defendant may be served by serving its' owner and CEO, Antonio Cardonia Palacios, at 5722 Hopper Rd., Houston, TX, 77016, or wherever he may be found.

**CENTRAL MUTUAL MSJ 077**

Defendant ANTHONY PALACIOS ("Palacios" or "Defendant Driver") is a resident of Harris County, Texas. He has answered this lawsuit and is before the court for all purposes.

To the extent that any of the above-named Defendant(s) are conducting business pursuant to a trade name or assumed name, then suit is brought against Defendant(s) pursuant to the terms of Rule 28 of the *Texas Rules of Civil Procedure*, and Plaintiff hereby demands that upon answering the suit, that Defendant(s) answer in both Defendant(s)' correct legal name and Defendant(s)' assumed name(s).

### III.
### JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this lawsuit, and the damages sought by Plaintiff in this cause of action are within the jurisdictional limits of the Court.

Venue is proper in Harris County, Texas, pursuant to *Texas Civil Practices and Remedies Code* Chap. § 15.002(a)(1) because it is the county in which all, or a substantial part, of the events and/or omissions giving rise to this lawsuit occurred. Lastly, no mandatory venue provision applies.

### IV.
### FACTS

On or about August 7, 2020 at approximately 1:00 p.m., at or near the intersection of Hartwick Rd. and Hirsch Rd., in Houston, Harris County, TX, a commercial vehicle, which was being permissively operated by an authorized driver, PALACIOS, who was speeding above the posted speed limit of 35 mph and crashed into the vehicle that was being operated by ROBERSON.

In this regard, the large commercial vehicle had been taken to Laredo Auto Truck Repair ("LAREDO") for repair work. Upon information and belief, PALACIOS was working for LAREDO and had taken the large commercial vehicle to be washed, was returning the large

2

commercial truck to LAREDO. PALACIOS was speeding above the speed limit of 35 mph and violently crashed into ROBERSON'S vehicle ("the Wreck"). Defendants' failure(s) to use ordinary care in the entrustment and operation of the large commercial truck was a proximate cause of the Wreck and Plaintiff's resulting damages.

**V.**

**CAUSES OF ACTION AGAINST LAREDO AND PALACIOS**

*Negligence*

At the time and place in question, LAREDO AUTO TRUCK REPAIR, by and through its permissive driver, PALACIOS, was guilty of the following separate acts of negligence, each of which, singularly or in combination, were a proximate cause of the injuries, harms and losses alleged herein.

Additionally, PALACIOS, as a permissive driver of the large commercial truck, was using it with the owner's knowledge, consent and approval.  Further, PALACIOS was guilty of negligence for the following reasons:

a. Failing to control his speed;

b. Driver inattention;

c. Failing to maintain a proper lookout as a person using ordinary care would have done;

d. Failing to drive the posted speed limit;

e. Failing to heed traffic laws as a person using ordinary care would have done under the same or similar circumstances;

f. Failing to take appropriate evasive action to avoid the Wreck such as a reasonably prudent person would have done under the same or similar circumstances; and

g. Operating the large commercial truck with willful or wanton disregard for the safety of other drivers using Texas highways, including Plaintiff;

3

Plaintiff would show that LAREDO'S omissions or acts through its officers, vice-principals, employees, permissive drivers or agents, as set forth herein and otherwise, constitutes negligence, each and all of which were a proximate cause of the Wreck and Plaintiff's resulting injuries, harms and losses.  These acts and/or omissions include but are not limited to the following:

a.    Failing to develop and implement policies and procedures relating to the safe use of its fleet of company vehicles by inadequately trained and/or inexperienced permissive drivers operating large commercial trucks over whom it exercised control;

b.    Failing to adequately and/or properly train and supervise its permissive drivers over whom it exercised control in connection with the operation of its fleet of company vehicles;

c.    Failing to ensure that inexperienced permissive drivers over whom it exercised control had the requisite amount of experience and training to operate one of its fleet of large company vehicles;

d.    Failing to adequately train, manage, direct, and/or supervise its permissive drivers over whom it exercised control who were operating any of its fleet of large company vehicles;

e.    Failing to exercise reasonable care in the supervision of permissive drivers over whom it exercised control in connection with the operation of its fleet of large company vehicles;

f.    Failing to reasonably exercise the supervisory right of its permissive drivers over whom it exercised control in connection with the operating of its fleet of large company vehicles;

g.    Failing to stop its permissive drivers over whom it exercised control from operating any of its fleet of company vehicles in an unsafe manner and failing to train and instruct permissive drivers over whom it exercised control to operate its fleet of large company vehicles in a manner that would have prevented the serious injuries sustained by Plaintiff on the date of the Wreck;

h.    Failing to comply with its policies and procedures relating to conducting safety meetings with its permissive drivers over whom it exercised control in connection with the operation of its fleet of large vehicles;

i.    Failing to properly implement Job Safety Analysis ("JSAs") relating to the safe operation of its fleet of company vehicles for its permissive drivers over whom it exercised control;

4

j.      Failing to ensure a competent, adequately trained permissive driver over whom it exercised control, was operating the subject large commercial truck on the date of the Wreck;

k.      Failing to ensure a competent supervisor or other worker was assigned and was working at all times to safely monitor its permissive drivers over whom it exercised control, to ensure permissive drivers over whom it exercised control, could safely operate its fleet of large company vehicles;

l.      Failing to require its permissive drivers over whom it exercised control could properly and safely operate its fleet of large company vehicles on the date of the Wreck;

m.      Failing to develop and/or implement a post-accident drug and/or alcohol testing policy for its permissive drivers over whom it exercised control;

n.      Failing to perform a post-accident drug and/or alcohol test or take other remedial action relating the permissive driver PALACIOS after the Wreck;

o.      Failing to ensure that a safety meeting occurred prior to the permissive driver PALACIOS's operation of the large company vehicle on the date of the Wreck;

p.      Failing to have policies and procedures in place, including obtaining MVRs and performing criminal background checks on permissive drivers who were entrusted with operating its fleet of large company vehicles in the furtherance of its for-profit business interests;

q.      Failing to conduct a road test of PALACIOS prior to allowing him to permissively operate a large vehicle; and

r.      Failing to comply with recognized industry standards, including American National Standard-ANSI/ASSE Standard Z15.1-2017- S*afe Practices of Motor Vehicle Operation.*

s.      Failing to develop and implement any standards for the Safe Practices of Motor Vehicle Operations per appropriate national standards for companies such as LAREDO, including failing to develop written safety policies, failing to enforce those policies if they existed at the time of the Wreck, failing to develop organizational safety rules and proper orientation and training permissive drivers driving company vehicles, failing to have a distracted driving policy, failing to perform background checks on permissive drivers driving company vehicles, failing to develop and implement incident reporting and analysis policies, failing to develop and implement a policy on analysis of causal and contributing factors to incidents involving company vehicles and failing to develop and implement policies on the determination of whether incidents are preventable;

5

t.    Committing other acts and/or omissions of negligence, which will be specified at the time of trial.

All of the above identified acts or omissions on the part of LAREDO and/or its agents, servants, employees, vice-principals, permissive drivers and/or hired hands over whom it exercised control, including PALACIOS, was or were a proximate cause of the Wreck and the resulting injuries, harms and losses sustained by the Plaintiff.

Plaintiff would show that each of the foregoing acts and/or omissions constituted negligence and that one, more than one, or all of such acts and/or omissions and various combinations thereof were a proximate cause of the Wreck, and the serious, debilitating and life altering injuries, harms and losses sustained by Plaintiff. Plaintiff sustained injuries to his left knee, left elbow, left shoulder, head, neck and lower back and he also sustained a traumatic brain injury ("TBI").  Plaintiff has sought and continues to seek reasonable and necessary medical treatment for the injuries he sustained in this crash.

*Gross Negligence*

Defendant, LAREDO, by and through its vice-principals negligently allowed PALACIOS to permissively operate one of its large company owned vehicles without conducting any investigation of his driving ability and without any knowledge of his driving ability or prior driving history.

Additionally, LAREDO, by and through its vice-principals, had actual knowledge that it was responsible for ensuring PALACIOS, as a permissive driver of one of its large company vehicles, complied with all safety policies and procedures of LAREDO, including, but not limited to, defensive driving techniques and driving safety policies.  However, it failed in all respects with regard to ensuring PALACIOS was aware of its defensive driving techniques and driving safety

6

policies because it allowed him to operate a large company vehicle without ever obtaining an MVR of PALACIOS or performing any background investigation of a 19-year-old young man's ability to operate one of its large commercial trucks in the furtherance of its for-profit business. In this regard, LAREDO allowed him to permissively drive a large company vehicle at the age of 19 when it knew, or reasonably should have known, he was not qualified to operate a large commercial truck or whether he had the capability of safely operating a large commercial truck. LAREDO's actual knowledge, by and through its vice-principals, employees, agents and/or servants, of its duties and obligations and its non-compliance with these duties and obligations is a clear indication it knew allowing PALACIOS to permissively operate one of its owned or leased fleet of large commercial vehicles without ensuring the PALACIOS possessed even the most basic safe driving skills posed a foreseeable, avoidable, and unreasonable risk to other's drivers' safety, including Plaintiff.

Plaintiff would show that the conduct of LAREDO, by and through the permissive driver, PALACIOS, on the date of the Wreck, including, but not limited to, PALACIOS's failure to control his speed, failure to take evasive action, failure to timely apply his brakes, being an inattentive driver, failing to comply with basic safe driving policies, failing to comply with LAREDO's safety policies and procedures and not ensuring PALACIOS was properly qualified and trained to operate one of its fleet of large company vehicles on Texas highways constitutes "gross neglect" as defined by Tex. Civ. PAV. & Rem. Code Section 41.003(a)(3). The acts and omissions of LAREDO, by and through its vice-principals, agents, servants and/or employees, on the date of the Wreck (i) when viewed objectively from the standpoint of the actor at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (ii) of which the actor had actual, subjective awareness of the risk

7

involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.  As a result of this conscious indifference of LAREDO and its vice-principals, agents, servants, employees, and/or statutory employees on the date of the Wreck, Plaintiff is entitled to recover exemplary damages.

Plaintiff would show that the conduct of PALACIOS on the date of the Wreck, including, but not limited to, failing to control his speed, failing to take evasive action, failing to timely apply his brakes, being an inattentive driver, failing to comply with basic safe driving policies, failing to comply with LAREDO's safety policies and procedures, and other acts identified above, thereby causing this violent Wreck, constitutes "gross neglect" as defined by Tex. Civ. Prac. & Rem. Code Section 41.003(a)(3).

PALACIOS was aware of the illegality, and more importantly, the safety concerns of speeding in a high-volume traffic area while permissively operating one of the LAREDO owned large commercial trucks. PALACIOS knew that speeding, failing to control his speed, failing to take evasive action, failing to timely apply his brakes, being an inattentive driver, failing to comply with basic safe driving policies, failing to comply with LAREDO's safety policies and procedures, among other acts identified above, involved infringing upon the rights, safety or welfare of others, including the Plaintiff.

The acts and omissions of PALACIOS on the date of the Wreck, including, but not limited to, failing to control his speed, failing to take evasive action, failing to timely apply his brakes, being an inattentive driver, failing to comply with basic safe driving policies, failing to comply with LAREDO's safety policies and procedures, among other acts identified above, while operating with one of LAREDO's fleet of large company vehicles (i) when viewed objectively from the standpoint of the actor at the time of its occurrence involved an extreme degree of risk,

8

considering the probability and magnitude of the potential harm to others, and (ii) of which the actor had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.  As a result of this conscious indifference of PALACIOS, Plaintiff is entitled to recover exemplary damages.

*Negligent Entrustment*

Plaintiff alleges that LAREDO negligently entrusted the truck PALACIOS was permissively operating on the date of the Wreck to PALACIOS.  LAREDO owned, leased and/or exercised control of whom was allowed to operate the LAREDO owned truck and trailer and PALACIOS was permissively operating this large commercial company truck at the time of the Wreck.  Plaintiff asserts that LAREDO entrusted the large commercial truck to PALACIOS on the date of the Wreck, that PALACIOS was an unlicensed, incompetent or reckless driver at the time of the entrustment, that LAREDO knew or should have known PALACIOS was an unlicensed, incompetent, or reckless driver, that PALACIOS was negligent in causing the Wreck and that PALACIOS's negligence in causing the Wreck was a proximate cause of Plaintiff's injuries, harms and losses.

## VI.
## DAMAGES

Plaintiff sustained injuries and damages as a proximate result of Defendants' conduct, and Plaintiff will respectfully request that the Court and Jury determine the amount of loss Plaintiff has incurred in the past and in the future, not only from a financial standpoint but also in terms of good health and freedom from pain and worry. There are certain elements of damages which are provided for by law that Plaintiff is entitled to have the Jury in this case consider separately to determine the sum of money for each element that will fairly and reasonably compensate Plaintiff for the injuries and damages and losses incurred and to be incurred.

CENTRAL MUTUAL MSJ 085

From the date of the incident in question up to the time of trial of this case, such elements of damages to be considered separately and individually for the purpose of determining the sum of money to compensate Plaintiff are as follows:

a. The physical pain that Plaintiff has suffered as a result of the Wreck up to the time of trial;

b. The mental anguish that Plaintiff has suffered from the date of the Wreck up to the time of trial;

c. The amount of reasonable medical, custodial, and attendant care expenses necessarily incurred in the treatment of Plaintiff's injuries from the date of the Wreck up to the time of trial;

d. The damages resulting from the physical impairment suffered by Plaintiff and his resulting inability to do those tasks and services that he would ordinarily have been able to perform;

e. The damages resulting from the physical disfigurement suffered by Plaintiff as a result of the Wreck up to the time of trial;

f. The pecuniary value of the household and other services that Plaintiff would have performed between the time of the Wreck and the time of trial; and,

g. Lost wages in the past.

From the time of time of trial, the elements of damages to be separately considered which Plaintiff will sustain in the future beyond the time of trial are such of the following that are shown by a preponderance of the evidence:

a. The physical pain that Plaintiff will suffer beyond the time of trial;

b. The mental anguish that Plaintiff will suffer in the future beyond the time of trial;

c. The reasonable value of medical, custodial and attendant care expenses that will necessarily be incurred in the treatment of Plaintiff's injuries in the future beyond the time of trial;

d. The damages resulting from the physical impairment that Plaintiff will continue to suffer in the future and her resulting inability to do those tasks and services that he ordinarily would have been able to perform beyond the time of trial of this case;

10

e. The damages resulting from the physical disfigurement that will be suffered by Plaintiff beyond the time of trial of this case;

f. The pecuniary value of the household and other services that Plaintiff would have performed beyond the time of trial; and

Upon trial of this case, the evidence will show that the Plaintiff has been damaged and will be damaged in a sum greatly in excess of the minimal jurisdictional limits of this Honorable Court, for which amount Plaintiff now brings suit.

All of Plaintiff's injuries, harms and losses as set forth herein above were proximately caused by the negligence and gross negligence of Defendants.  Accordingly, Plaintiff is bringing this suit for just, reasonable, and adequate compensation against Defendants, as well as for exemplary damages. Additionally, pursuant to Rule 47(c)(5) of the Texas Rules of Civil Procedure, Plaintiff is seeking monetary relief over $1,000,000.00. However, the jury in this matter will ultimately determine what amount of fair and reasonable damages should be awarded to Plaintiff for his injuries, harms and losses as a result of this Wreck.   Plaintiff reserves the right to amend this pleading to conform it to the jury's verdict no matter the amount awarded by the jury. Plaintiff seeks all other elements of damages not specifically identified herein to which Plaintiff is entitled under Texas law, including prejudgment interest, post-judgment interest, all costs of court, and any and all other legal and equitable relief, as well as for judgment against Defendant, and for all other relief to which Plaintiff is justly entitled.

## VII.
## RULE 193.7 NOTICE

Pursuant to Rule 193.7 of the *Texas Rules of Civil Procedure*, Plaintiff hereby gives actual notice to all Defendants that any and all documents and materials produced in response to written discovery may be used as evidence in this case; and, that any such materials may be used as evidence against the party producing the document or materials at any pretrial proceeding and/or

11

trial of this matter without the necessity of authenticating the document and/or materials produced in discovery.

## VIII.
## JURY DEMAND

Pursuant to *Texas Rules of Civil Procedure* 216, Plaintiff demands a jury trial. The requisite jury fee has been paid.

## IX.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that upon final trial, Plaintiff recovers the damages, both jointly and severally, as specified above, from the Defendants, plus costs of court, interest at the legal rate, both pre-judgment and post-judgment, exemplary damages and have such other and further relief, general and special, at law and in equity, to which Plaintiff may show himself to be justly entitled under the facts and circumstances.

(SIGNATURE BLOCK ON FOLLOWING PAGE)

12

CENTRAL MUTUAL MSJ 088

Respectfully submitted,

By:   */s/ Daryl L. Derryberry*
**DERRYBERRY ZIPS WADE, PLLC**
1043 Asher Way, Suite 200
Tyler, Texas 75703
(903) 526-2767
(903) 526-2714 – Facsimile

**DARYL L. DERRYBERRY**
State Bar No. 05774600
dld@dzwlaw.com
**CRAIG D. ZIPS**
State Bar No. 00797729
czips@dzwlaw.com

**AND**

**THE LAW OFFICES OF JIM EDWARDS**
550 Westcott, Suite 470
Houston, Texas 77007
(832) 742-9153
(832) 565-7925
firm@jimedwardslaw.com

**JAMES R. EDWARDS**
State Bar No. 24078466
**ATTORNEYS FOR PLAINTIFF**

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served via electronic filing, on this 28TH of September 2021, to all counsel of record.

*/S/ Daryl L. Derryberry*
**Daryl L. Derryberry**

Larry E. Cotten
Craig L. Brown
Cotten & Schmidt, LLP
100 Energy Way, Suite 2000
Ft. Worth, Texas 76102
lcotton@cottenschmidt.com
cbrown@cottenschmidt.com

14

**CENTRAL MUTUAL MSJ 090**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Josh Lyles on behalf of James Edwards
Bar No. 24078466
josh@jimedwardslaw.com
Envelope ID: 57685851
Status as of 9/29/2021 11:11 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Daryl L.Derryberry | | dld@dzwlaw.com | 9/28/2021 4:51:52 PM | SENT |
| James Edwards | 24078466 | firm@jimedwardslaw.com | 9/28/2021 4:51:52 PM | SENT |
| Jennifer Vyverberg | | jennifer@dzwlaw.com | 9/28/2021 4:51:52 PM | SENT |
| Mary Wintermote | | mwintermote@cottenschmidt.com | 9/28/2021 4:51:52 PM | SENT |
| Larry Cotten | | lcotten@cottenschmidt.com | 9/28/2021 4:51:52 PM | SENT |
| Lucille Dudley | | LDudley@cottenschmidt.com | 9/28/2021 4:51:52 PM | SENT |
| Craig LBrown | | cbrown@cottenschmidt.com | 9/28/2021 4:51:52 PM | SENT |
| Jerold H.Mitchell | | jmitchell@cottenschmidt.com | 9/28/2021 4:51:52 PM | SENT |

# EXHIBIT 4

CENTRAL MUTUAL MSJ 092

10/18/2022 10:53 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 69317924
By: Brittany Hall
Filed: 10/18/2022 10:53 AM

CAUSE NO. 2020-51214

| | | |
|---|---|---|
| ROY ROBERSON | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ANTONIO CARDONIA PALACIOS DBA | § | |
| LAREDO AUTO TRUCK REPAIR | § | |
| and ANTHONY PALACIOS | § | |
| *Defendants* | § | 269TH JUDICIAL DISTRICT |

## **PLAINTIFF'S FOURTH AMENDED PETITION AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, ROY ROBERSON, (hereinafter referred to as "Plaintiff," or by name), complaining of ANTONIO CARDONIA PALACIOS DBA LAREDO TRUCK REPAIR and ANTHONY PALACIOS (collectively "Defendants"), and for cause of action would respectfully show the Court the following:

### I.
### DISCOVERY CONTROL PLAN

Discovery in this matter may be conducted under Level 3 of the Texas Rules of Civil Procedure.

### II.
### PARTIES

Plaintiff, ROY ROBERSON ("Plaintiff" or "Roberson") is a resident of Texas.

Defendant, ANTONIO CARDENAS PALACIOS DBA LAREDO TRUCK REPAIR ("LAREDO") is, and at all times material hereto was, an individual doing business as Laredo Truck Repair, is a resident of Harris County and was actively doing business in the State of Texas at the time of the crash. He has answered this lawsuit and is before the court for all purposes.

**CENTRAL MUTUAL MSJ 093**

Defendant ANTHONY PALACIOS ("Palacios" or "Defendant Driver") is a resident of Harris County, Texas. He has answered this lawsuit and is before the court for all purposes.

To the extent that any of the above-named Defendant(s) are conducting business pursuant to a trade name or assumed name, then suit is brought against Defendant(s) pursuant to the terms of Rule 28 of the *Texas Rules of Civil Procedure*, and Plaintiff hereby demands that upon answering the suit, that Defendant(s) answer in both Defendant(s)' correct legal name and Defendant(s)' assumed name(s).

### III.
### JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this lawsuit, and the damages sought by Plaintiff in this cause of action are within the jurisdictional limits of the Court.

Venue is proper in Harris County, Texas, pursuant to *Texas Civil Practices and Remedies Code* Chap. § 15.002(a)(1) because it is the county in which all, or a substantial part, of the events and/or omissions giving rise to this lawsuit occurred. Lastly, no mandatory venue provision applies.

### IV.
### FACTS

On or about August 7, 2020 at approximately 1:00 p.m., at or near the intersection of Hartwick Rd. and Hirsch Rd., in Houston, Harris County, TX, a commercial vehicle, which was owned by AV and which was being permissively operated by a driver authorized to do so by AV, PALACIOS, was speeding above the posted speed limit of 35 mph and crashed into the vehicle that was being operated by ROBERSON.

In this regard, AV had taken a commercial vehicle to Laredo for some reason. Upon information and belief, AV provided permission for LAREDO'S employees and/or agents,

2

including PALACIOS, for customer relations activities, including having the commercial vehicles detailed prior to returning the vehicles to AV. Indeed, at the time of the crash, LAREDO was not engaged in selling, servicing, repairing, parking or storing AV's commercial vehicle that was involved in the crash. Upon information and belief, LAREDO was not performing any of the activities identified immediately above but one of its employees or agents was, with AV's permission, performing the customer relations activity of the having the commercial vehicle detailed prior to its return to AV.  PALACIOS, during this customer relations activity, was speeding above the speed limit of 35 mph and violently crashed into ROBERSON'S vehicle. ("Wreck") PALACIOS'S failure(s) to use ordinary care while permissively operating the AV commercial vehicle while performing the customer relations activity of the having the commercial vehicle detailed prior to its return to AV was a proximate cause of the Wreck and Plaintiff's resulting damages.

## V.
## CAUSES OF ACTION AGAINST LAREDO AND PALACIOS

*Negligence*

At the time and place in question, LAREDO, by and through its employee and/or agent driver, PALACIOS, was guilty of the following separate acts of negligence, each of which, singularly or in combination, were a proximate cause of the injuries, harms and losses alleged herein.

Additionally, PALACIOS, as a permissive driver of the AV owned commercial truck, was using it with AV's knowledge, consent and approval. Thus, AV has a duty to defend and indemnify PALACIOS because he was permissively operating the AV commercial vehicle while performing the customer relations activity of the having the commercial vehicle detailed prior to its return to AV.  Further, PALACIOS was guilty of negligence for the following reasons:

3

a.  Failing to control his speed;

b.  Driver inattention;

c.  Failing to maintain a proper lookout as a person using ordinary care would have done;

d.  Failing to drive the posted speed limit;

e.  Failing to heed traffic laws as a person using ordinary care would have done under the same or similar circumstances;

f.  Failing to take appropriate evasive action to avoid the Wreck such as a reasonably prudent person would have done under the same or similar circumstances; and

g.  Operating the AV owned large commercial truck with willful or wanton disregard for the safety of other drivers using Texas highways, including Plaintiff;

Plaintiff would show that LAREDO'S omissions or acts through its officers, vice-principals, employees, permissive drivers or agents, as set forth herein and otherwise, constitutes negligence, each and all of which were a proximate cause of the Wreck and Plaintiff's resulting injuries, harms and losses.  These acts and/or omissions include but are not limited to the following:

a.  Failing to develop and implement policies and procedures relating to the safe use of its fleet of company vehicles by inadequately trained and/or inexperienced permissive drivers operating large commercial trucks over whom it exercised control;

b.  Failing to adequately and/or properly train and supervise its permissive drivers over whom it exercised control in connection with the operation of its fleet of company vehicles;

c.  Failing to ensure that inexperienced permissive drivers over whom it exercised control had the requisite amount of experience and training to operate one of its fleet of large company vehicles;

d.  Failing to adequately train, manage, direct, and/or supervise its permissive drivers over whom it exercised control who were operating any of its fleet of large company vehicles;

4

**CENTRAL MUTUAL MSJ 096**

e.  Failing to exercise reasonable care in the supervision of permissive drivers over whom it exercised control in connection with the operation of its fleet of large company vehicles;

f.  Failing to reasonably exercise the supervisory right of its permissive drivers over whom it exercised control in connection with the operating of its fleet of large company vehicles;

g.  Failing to stop its permissive drivers over whom it exercised control from operating any of its fleet of company vehicles in an unsafe manner and failing to train and instruct permissive drivers over whom it exercised control to operate its fleet of large company vehicles in a manner that would have prevented the serious injuries sustained by Plaintiff on the date of the Wreck;

h.  Failing to comply with its policies and procedures relating to conducting safety meetings with its permissive drivers over whom it exercised control in connection with the operation of its fleet of large vehicles;

i.  Failing to properly implement Job Safety Analysis ("JSAs") relating to the safe operation of its fleet of company vehicles for its permissive drivers over whom it exercised control;

j.  Failing to ensure a competent, adequately trained permissive driver over whom it exercised control, was operating the subject large commercial truck on the date of the Wreck;

k.  Failing to ensure a competent supervisor or other worker was assigned and was working at all times to safely monitor its permissive drivers over whom it exercised control, to ensure permissive drivers over whom it exercised control, could safely operate its fleet of large company vehicles;

l.  Failing to require its permissive drivers over whom it exercised control could properly and safely operate its fleet of large company vehicles on the date of the Wreck;

m.  Failing to develop and/or implement a post-accident drug and/or alcohol testing policy for its permissive drivers over whom it exercised control;

n.  Failing to perform a post-accident drug and/or alcohol test or take other remedial action relating the permissive driver PALACIOS after the Wreck;

o.  Failing to ensure that a safety meeting occurred prior to the permissive driver PALACIOS's operation of the large company vehicle on the date of the Wreck;

p.  Failing to have policies and procedures in place, including obtaining MVRs and performing criminal background checks on permissive drivers who were entrusted

CENTRAL MUTUAL MSJ 097

with operating its fleet of large company vehicles in the furtherance of its for-profit business interests;

q.    Failing to conduct a road test of PALACIOS prior to allowing him to permissively operate a large AV owned or leased vehicle; and

r.    Failing to comply with recognized industry standards, including American National Standard-ANSI/ASSE Standard Z15.1-2017- *Safe Practices of Motor Vehicle Operation.*

s.    Failing to develop and implement any standards for the Safe Practices of Motor Vehicle Operations per appropriate national standards for companies such as LAREDO, including failing to develop written safety policies, failing to enforce those policies if they existed at the time of the Wreck, failing to develop organizational safety rules and proper orientation and training permissive drivers driving company vehicles, failing to have a distracted driving policy, failing to perform background checks on permissive drivers driving company vehicles, failing to develop and implement incident reporting and analysis policies, failing to develop and implement a policy on analysis of causal and contributing factors to incidents involving company vehicles and failing to develop and implement policies on the determination of whether incidents are preventable;

t.    Committing other acts and/or omissions of negligence, which will be specified at the time of trial.

All of the above identified acts or omissions on the part of LAREDO and/or its agents, servants, employees, vice-principals, permissive drivers and/or hired hands over whom it exercised control, including PALACIOS, was or were a proximate cause of the Wreck and the resulting injuries, harms and losses sustained by the Plaintiff.

Plaintiff would show that each of the foregoing acts and/or omissions constituted negligence and that one, more than one, or all of such acts and/or omissions and various combinations thereof were a proximate cause of the Wreck, and the serious, debilitating and life altering injuries, harms and losses sustained by Plaintiff. Plaintiff sustained injuries to his left knee, left elbow, left shoulder, head, neck and lower back and he also sustained a traumatic brain injury ("TBI").  Plaintiff has sought and continues to seek reasonable and necessary medical treatment for the injuries he sustained in this crash.

**CENTRAL MUTUAL MSJ 098**

*Gross Negligence*

Defendant, LAREDO, by and through its vice-principals negligently allowed PALACIOS to permissively operate one of AV's company owned vehicles while performing a customer relations activity without conducting any investigation of his driving ability and without any knowledge of his driving ability or prior driving history.

Additionally, LAREDO, by and through its vice-principals, had actual knowledge that it was responsible for ensuring PALACIOS, as a permissive driver of one of AV's company vehicles, complied with all safety policies and procedures of LAREDO, including, but not limited to, defensive driving techniques and driving safety policies.  However, it failed in all respects with regard to ensuring PALACIOS was aware of its defensive driving techniques and driving safety policies because it allowed him to operate an AV company vehicle without ever obtaining an MVR of PALACIOS or performing any background investigation of a 19-year-old young man's ability to operate one of AV's commercial trucks in the furtherance of its for-profit business. In this regard, LAREDO allowed him to permissively drive an AV owned large company vehicle at the age of 19 when it knew, or reasonably should have known, he was not qualified to operate a large commercial truck or whether he had the capability of safely operating a large commercial truck. LAREDO's actual knowledge, by and through its vice-principals, employees, agents and/or servants, of its duties and obligations and its non-compliance with these duties and obligations is a clear indication it knew allowing PALACIOS to permissively operate one of AV's company owned or leased fleet of commercial vehicles without ensuring the PALACIOS possessed even the most basic safe driving skills posed a foreseeable, avoidable, and unreasonable risk to other's drivers' safety, including Plaintiff.

7

**CENTRAL MUTUAL MSJ 099**

Plaintiff would show that the conduct of LAREDO, by and through the permissive driver, PALACIOS, on the date of the Wreck, including, but not limited to, PALACIOS's failure to control his speed, failure to take evasive action, failure to timely apply his brakes, being an inattentive driver, failing to comply with basic safe driving policies, failing to comply with LAREDO's safety policies and procedures and not ensuring PALACIOS was properly qualified and trained to operate one of AV's fleet of  company vehicles on Texas highways constitutes "gross neglect" as defined by Tex. Civ. PAV. & Rem. Code Section 41.003(a)(3). The acts and omissions of LAREDO, by and through its vice-principals, agents, servants and/or employees, on the date of the Wreck (i) when viewed objectively from the standpoint of the actor at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (ii) of which the actor had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.  As a result of this conscious indifference of LAREDO and its vice-principals, agents, servants, employees, and/or statutory employees on the date of the Wreck, Plaintiff is entitled to recover exemplary damages.

Plaintiff would show that the conduct of PALACIOS on the date of the Wreck, including, but not limited to, failing to control his speed, failing to take evasive action, failing to timely apply his brakes, being an inattentive driver, failing to comply with basic safe driving policies, failing to comply with LAREDO's safety policies and procedures, and other acts identified above, thereby causing this violent Wreck, constitutes "gross neglect" as defined by Tex. Civ. PAV. & Rem. Code Section 41.003(a)(3).

PALACIOS was aware of the illegality, and more importantly, the safety concerns of speeding in a high-volume traffic area while permissively operating a commercial truck.

CENTRAL MUTUAL MSJ 100

PALACIOS knew that speeding, failing to control his speed, failing to take evasive action, failing to timely apply his brakes, being an inattentive driver, failing to comply with basic safe driving policies, failing to comply with LAREDO's safety policies and procedures, among other acts identified above, involved infringing upon the rights, safety or welfare of others, including the Plaintiff.

The acts and omissions of PALACIOS on the date of the Wreck, including, but not limited to, failing to control his speed, failing to take evasive action, failing to timely apply his brakes, being an inattentive driver, failing to comply with basic safe driving policies, failing to comply with LAREDO's safety policies and procedures, among other acts identified above, while operating with one of AV's fleet of company vehicles (i) when viewed objectively from the standpoint of the actor at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (ii) of which the actor had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.  As a result of this conscious indifference of PALACIOS, Plaintiff is entitled to recover exemplary damages.

*Negligent Entrustment*

Plaintiff alleges that LAREDO negligently entrusted the truck PALACIOS was permissively operating on the date of the Wreck to PALACIOS.  AV owned, leased and/or exercised control of whom was allowed to operate the AV owned truck and trailer and PALACIOS was permissively operating this AV owned commercial company truck at the time of the Wreck. Plaintiff asserts that AV entrusted the company truck to  LAREDO and LAREDO then entrusted the commercial truck to PALACIOS on the date of the Wreck and that PALACIOS was an unlicensed, incompetent or reckless driver at the time of the entrustment, that AV and LAREDO

9

knew or should have known PALACIOS was an unlicensed, incompetent, or reckless driver, that PALACIOS was negligent in causing the Wreck and that PALACIOS's negligence in causing the Wreck was a proximate cause of Plaintiff's injuries, harms and losses.

**VI.**
**DAMAGES**

Plaintiff sustained injuries and damages as a proximate result of Defendants' conduct, and Plaintiff will respectfully request that the Court and Jury determine the amount of loss Plaintiff has incurred in the past and in the future, not only from a financial standpoint but also in terms of good health and freedom from pain and worry. There are certain elements of damages which are provided for by law that Plaintiff is entitled to have the Jury in this case consider separately to determine the sum of money for each element that will fairly and reasonably compensate Plaintiff for the injuries and damages and losses incurred and to be incurred.

From the date of the incident in question up to the time of trial of this case, such elements of damages to be considered separately and individually for the purpose of determining the sum of money to compensate Plaintiff are as follows:

a.  The physical pain that Plaintiff has suffered as a result of the Wreck up to the time of trial;

b.  The mental anguish that Plaintiff has suffered from the date of the Wreck up to the time of trial;

c.  The amount of reasonable medical, custodial, and attendant care expenses necessarily incurred in the treatment of Plaintiff's injuries from the date of the Wreck up to the time of trial;

d.  The damages resulting from the physical impairment suffered by Plaintiff and his resulting inability to do those tasks and services that he would ordinarily have been able to perform;

e.  The damages resulting from the physical disfigurement suffered by Plaintiff as a result of the Wreck up to the time of trial;

10

    f.   The pecuniary value of the household and other services that Plaintiff would have performed between the time of the Wreck and the time of trial; and,

    g.   Lost wages in the past.

From the time of time of trial, the elements of damages to be separately considered which Plaintiff will sustain in the future beyond the time of trial are such of the following that are shown by a preponderance of the evidence:

    a.   The physical pain that Plaintiff will suffer beyond the time of trial;

    b.   The mental anguish that Plaintiff will suffer in the future beyond the time of trial;

    c.   The reasonable value of medical, custodial and attendant care expenses that will necessarily be incurred in the treatment of Plaintiff's injuries in the future beyond the time of trial;

    d.   The damages resulting from the physical impairment that Plaintiff will continue to suffer in the future and her resulting inability to do those tasks and services that he ordinarily would have been able to perform beyond the time of trial of this case;

    e.   The damages resulting from the physical disfigurement that will be suffered by Plaintiff beyond the time of trial of this case;

    f.   The pecuniary value of the household and other services that Plaintiff would have performed beyond the time of trial; and

Upon trial of this case, the evidence will show that the Plaintiff has been damaged and will be damaged in a sum greatly in excess of the minimal jurisdictional limits of this Honorable Court, for which amount Plaintiff now brings suit.

All of Plaintiff's injuries, harms and losses as set forth herein above were proximately caused by the negligence and gross negligence of Defendants.  Accordingly, Plaintiff is bringing this suit for just, reasonable, and adequate compensation against Defendants, as well as for exemplary damages. Additionally, pursuant to Rule 47(c)(5) of the Texas Rules of Civil Procedure, Plaintiff is seeking monetary relief over $1,000,000.00. However, the jury in this matter will ultimately determine what amount of fair and reasonable damages should be awarded to Plaintiff

**CENTRAL MUTUAL MSJ 103**

for his injuries, harms and losses as a result of this Wreck.   Plaintiff reserves the right to amend this pleading to conform it to the jury's verdict no matter the amount awarded by the jury. Plaintiff seeks all other elements of damages not specifically identified herein to which Plaintiff is entitled under Texas law, including prejudgment interest, post-judgment interest, all costs of court, and any and all other legal and equitable relief, as well as for judgment against Defendant, and for all other relief to which Plaintiff is justly entitled.

## VII.
## RULE 193.7 NOTICE

Pursuant to Rule 193.7 of the *Texas Rules of Civil Procedure*, Plaintiff hereby gives actual notice to all Defendants that any and all documents and materials produced in response to written discovery may be used as evidence in this case; and, that any such materials may be used as evidence against the party producing the document or materials at any pretrial proceeding and/or trial of this matter without the necessity of authenticating the document and/or materials produced in discovery.

## VIII.
## JURY DEMAND

Pursuant to *Texas Rules of Civil Procedure* 216, Plaintiff demands a jury trial. The requisite jury fee has been paid.

## IX.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that upon final trial, Plaintiff recovers the damages, both jointly and severally, as specified above, from the Defendants, plus costs of court, interest at the legal rate, both pre-judgment and post-judgment, exemplary damages and have such other and further relief,

CENTRAL MUTUAL MSJ 104

general and special, at law and in equity, to which Plaintiff may show himself to be justly entitled

under the facts and circumstances.

Respectfully submitted,

By:    */s/ Daryl L. Derryberry*
       **DERRYBERRY ZIPS WADE, PLLC**
       1043 Asher Way, Suite 200
       Tyler, Texas 75703
       (903) 526-2767
       (903) 526-2714 – Facsimile

       **DARYL L. DERRYBERRY**
       State Bar No. 05774600
       dld@dzwlaw.com
       **CRAIG D. ZIPS**
       State Bar No. 00797729
       czips@dzwlaw.com

       **AND**

       **THE LAW OFFICES OF JIM EDWARDS**
       550 Westcott, Suite 470
       Houston, Texas 77007
       (832) 742-9153
       (832) 565-7925
       firm@jimedwardslaw.com

       **JAMES R. EDWARDS**
       State Bar No. 24078466
       **ATTORNEYS FOR PLAINTIFF**

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served via electronic filing, on this 18th of October 2022, to all counsel of record.

_**/S/ Daryl L. Derryberry**_
**Daryl L. Derryberry**

Stephen Garrett
Cotten & Schmidt, LLP
Three Hughes Landing
1780 Hughes Landing Blvd., Suite 289
The Woodlands, Texas 77381
sgarrett@cottenschmidt.com

14

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Stacy Thiem on behalf of Daryl Derryberry
Bar No. 05774600
stacie@dzwlaw.com
Envelope ID: 69317924
Status as of 10/18/2022 12:54 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Daryl L.Derryberry | | dld@dzwlaw.com | 10/18/2022 10:53:40 AM | SENT |
| James Edwards | 24078466 | firm@jimedwardslaw.com | 10/18/2022 10:53:40 AM | SENT |
| Stacy Thiem | | stacie@dzwlaw.com | 10/18/2022 10:53:40 AM | SENT |
| Mary Wintermote | | mwintermote@cottenschmidt.com | 10/18/2022 10:53:40 AM | SENT |
| Stephen Garrett | | sgarrett@cottenschmidt.com | 10/18/2022 10:53:40 AM | SENT |
| Mical Lin | | mlin@cottenschmidt.com | 10/18/2022 10:53:40 AM | SENT |
| Stephanie Sutton | | ssutton@cottenschmidt.com | 10/18/2022 10:53:40 AM | SENT |
| Matthew G.Gallagher | | matt@mgg-law.com | 10/18/2022 10:53:40 AM | SENT |
| Craig LBrown | | cbrown@cottenschmidt.com | 10/18/2022 10:53:40 AM | SENT |